548

Common Pleas Court of Hamilton County.

CINCINNATI UNION TERMINAL CO. V. LELAND G. BANNING.

(Decided December 13, 1929.)

*Taft, Stettinius & Hollister,* and *John H. Clippinger,* for the plaintiff.

*Theodore Horstman, Clarence M. Smith,* and *Robert A. Ludeke,* for defendant.

BELL, J.

This is a condemnation proceeding brought by the plaintiff against the defendant, which resulted in a verdict in favor of the defendant, and is now before the court on defendant's motion for a new trial. Many assignments

of error are made in the motion, the brief and the argument.

The record is very voluminous and in a trial lasting for six weeks undoubtedly some errors were committed. Whether or not any of the errors committed were prejudicial to the rights of the defendant which would warrant the granting of the motion, is the question to be determined. In an attempt to assist counsel, and if this case is reviewed, the reviewing court or courts, each assignment of error will be considered and disposed of as briefly as possible.

First is the overruling of two challenges for cause against two jurors, one by the name of Charles H. Kelly, and the other by the name of Ella Seibel. While the record does not disclose the examination of the prospective jurors, the court will take judicial notice of what occurred and dispose of the claim as though it was raised by the record.

The *voir dire* examination of Ella Seibel disclosed that she is a married woman whose husband at the time of the trial was an employee of one of the seven railroads entering the city of Cincinnati, and that the railroad which employed her husband owned some stock of the Cincinnati Union Terminal Company, the plaintiff in the case.

The *voir dire* examination of Charles H. Kelly disclosed that he at one time had been employed by one of the seven railroad companies running into the city of Cincinnati. At the time of the trial he was retired and was on the pension list of the railroad for which he had worked and that that railroad owned stock in the Cincinnati Union Terminal Company.

The qualification of jurors in a condemnation proceeding is provided by Section 11051 G. C., and provides that the person called for service in such case is disqualified if he is interested in the corporation which filed the petition, either as owner, stockholder, agent, attorney or otherwise, and it is further provided in Section 11052 that after the box is filled both parties shall have the right of peremptory challenge and challenge for cause.

Section 11437, G. C., provides for challenge of persons called as jurors, Section 5, of Section 11437—"That he is the employer, employee, counselor, agent, steward or attorney of either party."

It is well settled that no challenge for cause can be sustained other than those enumerated in the statute. Neither of these persons come within any of the disqualifications in either of these sections, and keeping in mind that both prospective jurors said that they could render a fair and impartial verdict, and the further fact that this verdict was unanimous, the conclusion cannot be reached that defendant was denied a fair and impartial trial by reason of these two jurors remaining on the jury.

Next it is claimed that the court failed to permit the jury to be taken to view other property than the property sought to be appropriated in the proceeding, and that this action of the court was error.

This, like the complaint with reference to the jurors, is not disclosed by the record, but will be considered and be passed upon.

After the jury was impaneled and sworn, counsel for the defendant requested the court that the jury be sent to view property other than that described in the petition. This request was refused and is now assigned as error.

The authority for view in a condemnation case is found in Section 11054, G. C., and the language of that section is that a writ to the sheriff issued by the court shall command him to conduct the twelve jurors named in the panel to this writ annexed, *to view the property or premises sought to be appropriated.* No authority is found in that section for the jury to view any property other than that sought to be appropriated. It may be claimed, however, that Section 11448, G. C., would authorize the granting of a request such as made in this case. This section provides that the jury may be sent to view the property the subject of litigation, or to any place where a material fact occurred. This section does not in any wise aid the defendant. The property which the defendant sought to have the jury view, was property owned by some one else in

close proximity, not similar to the property in question, and the reason for the request was that defendant knew, or claimed to have known, that certain witnesses of the plaintiff were going to testify as to the availability of such property. If the claim of the defendant is well taken, there would be no limit to the number of properties which might be viewed, many of which might never even be mentioned in the evidence. No authority has been cited by the defendant for such procedure and it is not warranted by the language of either section of the General Code.

Many errors as to the introduction and the exclusion of evidence have been raised.

The defendant called as a witness one J. H. Doppes. This witness was called after certain evidence had been introduced that the property which the plaintiff desired to take was available for lumber yard purposes. Mr. Doppes, who was a lumber man in the lumber business, was asked whether or not he could express an opinion as to the value of this ground for lumber yard purposes, and answered that he could. He was permitted to express such opinion and upon motion by counsel for the plaintiff, this evidence was later excluded.

Counsel for defendant now claims that this was prejudicial error. In support of this position he cites one case from Oklahoma, reported in 31 Okla., 458, in which the Supreme Court of Oklahoma held that in a condemnation proceeding where it had been testified that the *most available* use of the land was for farming, that it was not reversible error for the court to permit evidence as to the value of the land for that particular use. No authority has been cited, and the court has been able to find none where it has been held that the defendant has a right to introduce evidence of the value of the ground for every particular use for which it is available, and this seems especially true in view of the many pronouncements of the courts of this state that the test is the *fair market value;* but even assuming that this evidence should have been admitted and should have been permitted to remain in the record, considering the fact that the defendant was

permitted to introduce eleven other witnesses on this question of value, can it be said that the failure to permit this evidence to remain was such prejudicial error as to warrant a new trial? I do not think so.

A bitter complaint is made by counsel for the defendant to the admission of testimony of one C. W. Baker, Jr., who was called as a witness by the plaintiff. Prior to Mr. Baker taking the witness stand, Mr. Banning had been called as a witness in his own behalf and had given in evidence his opinion as to the value of the land which the plaintiff sought to appropriate. He stated that the value of the land sought to be appropriated was between three and one-half and five dollars per square foot, placing different values, between those two amounts, on different parcels described in the petition. The land sought to be appropriated in this case was admittedly in that part of the city of Cincinnati known as the Millcreek Valley, and after his direct examination in which he gave his opinion, he was asked upon cross-examination whether or not at a time and place mentioned he had not in a conversation with Mr. Charles W. Baker, Jr., made a statement as to the value of all property in the Millcreek Valley, which it was claimed was entirely inconsistent with the value placed by him upon this property in this case. His answers to these specific questions were that he did not make the statements or that he did not remember having made the statements. In the plaintiff's testimony C. W. Baker, Jr., was called to testify as a witness. The record discloses that the only objections made by counsel for the defendant as to the impeaching testimony given by Mr. Baker were sustained by the court, except that objection wherein counsel for the defendant objected to Mr. Baker being permitted to testify upon the ground that Mr. Banning had made no specific denial of the statement, but had said that he did not remember. The rule is so well settled, as to need the citation of no authorities, that where a witness is asked with reference to what is claimed to be inconsistent statements and replies either that he did not make the statement, or that he does not remember, the im-

peaching witness's testimony is competent to go to the jury.

It is also claimed that the court committed error in that the court declined to permit counsel for the defendant, upon cross-examination, to propound questions with reference to other sales in which the sales price was stated by counsel in his question.

Without discussion of what the general law upon the subject may be, it would seem that the law of Ohio is to the effect that where one has given in evidence his opinion of the value of land to be appropriated, he may be cross-examined as to the general selling price of land in the neighborhood, but there is no case in this state which has been called to my attention, or which I have been able to find, that permits on cross-examination, questions with reference to other sales wherein the alleged price at which the sale was made is incorporated in the question. *Railroad Company* v. *Gorsuch et al.*, 8 C. C. (N. S.), 297, 76 O. S., 609, affirming the Gorsuch case without report; *Morrison* v. *Cleveland*, 17 C. C. (N. S.), 427.

An additional reason which makes the questions on that subject objectional is that the sales about which the witness was questioned were not voluntary sales in the open market, but had to do with a transaction between an individual or corporation and some corporation, which, by the Constitution, was given the right of eminent domain, and before other sales can ever be admissible in evidence, they must be voluntary sales in the open market, and not sales to those who have the power of eminent domain in transactions involving public improvements.

It is further objected that the court erred in permitting Mr. Wildberg to give in evidence his opinion of the value of the property sought to be taken. While it is true that the knowledge of Mr. Wildberg was limited with reference to values, and while it is true that the admission of his opinion was probably erroneous, in view of the number of witnesses who testified as to value in this case (some eighteen in number), and in view of the further fact that Mr. Lawson, who testified for the defendant, had very

little, if any more, information upon which to base his opinion than did the witness Wildberg, the testimony of this witness, or of them both, does not constitute prejudicial error warranting the granting of a new trial.

It is also objected that the court committed error with reference to the testimony of the witness Bulwer, in sustaining the objection to the question wherein he was asked whether or not he could re-locate certain industries within certain bounds, outside of the Terminal project, whose property had been, or was to be taken by the Terminal project. The court thinks that there is nothinig in this claim of error.

Another assignment of error is the claimed misconduct on the part of counsel for the plaintiff.

The controversy which gave rise to this claim is set forth on pages 1198 to 1203. Counsel for the defendant asked one of the witnesses, Mr. Jones, who had expressed an opinion as to the value of defendant's property, this question:

"If you were informed that by perpetual lease, dated July, 1923, the Chesapeake & Ohio Railroad Company acquired from Mr. Banning 6,432 square feet of ground abutting Gerard Avenue, and that that ground was about one-half filled to grade and the terms were $3.73 per square foot, would that change your mind as to the value of Mr. Banning's said ground between Liberty and Flint streets?

"Mr. Taft: I object. *The actual price, may it please the court, was 50 cents a foot as far as the land itself is concerned. It is not much any way you figure it. Anything additional to 50 cents is damages. I move the question be stricken out and the jury instructed to disregard it.*"

The language italicized is the basis of the claim of misconduct of counsel and it is urged that upon this ground the verdict should be set aside and a new trial granted. Counsel for the defendant made no motion to the court, but when the italicized language was used by counsel for the Terminal Company, counsel for the defendant said this:

"If the court please, I wish an opportunity to be heard. Mr. Taft violated one of the plainest rules of evidence

when he undertook to state what the facts were about this transaction. I do not ask the court of the jury to accept my word for it. I have here the lease that has been re-cirded ever since about 1923, which will speak for itself, and it will show who is right and who is wrong."

All of this transpired in the presence and hearing of the jury. The only thing before the court was an objection to the question propounded by counsel for the defendant, and in disposing of that question this language was used by the court:

"The objection to the question is sustained. You, ladies and gentlemen, will disregard the question and you will disregard the statement of counsel for the Terminal Company in which he assumed to say what the price was. Counsel for the defendant will be permitted an exception to the ruling of the court, and the court will permit no further questions to be asked of this witness with regard to other sales wherein any price is stated by counsel. In the opinion of the court, if the court has committed error in these rulings, it is sufficiently taken care of at this time in the record. You may proceed."

No further objection was made to the remark by counsel for the Terminal Company. No motion was addressed to the court for its consideration; no motion for the withdrawal of a juror or a continuance of the cause. While the court considers that this was an improper remark by counsel for the Terminal Company, it was made during the progress of a bitterly contested cause and the court is not prepared to say that the remark amounted to misconduct; but if it be conceded to be misconduct, in view of the record, it is not of sufficient moment to warrant a new trial.

It is also claimed that the court erred in refusing to give two special charges offered by the defendant before argument. These two special charges were numbered 9 and 10.

The proposition of law contained in No. 9, in the opinion of the court, was fully covered by special charges Nos. 4, 6 and 7 as given, and the language of No. 9 was not entirely free from ambiguity, and if given, might tend to

confuse, rather than to assist, the jury in determining the issues.

Special charge No. 10 had to do with the vacation of streets and said to the jury that the jury could consider the prospect of vacation of streets as an item giving whatever value it possessed to the ground.

While it is true that the evidence in this case disclosed that Wilstack, Wade and Flint streets were not improved streets, yet there is not a scintilla of evidence in this record that there was any intention on the part of the city of Cincinnati to vacate such streets, nor that the defendant or any person upon his behalf, nor upon behalf of the plaintiff ever made an application to the city council to vacate such streets. This charge was clearly unwarranted under the evidence.

The defendant also claims and earnestly urges that he be granted a new trial because of the inadequacy of the verdict, and the further claim that the jury did not assess compensation for two buildings which were located upon the ground described as Parcel No. 4 in the petition.

On the question of value the defendant offered eleven witnesses, who placed the value on the property to be taken at figures ranging between $600,000 and something over a million dollars. The plaintiff offered seven witnesses who testified as to the value and fixed the value of the ground sought to be taken at amounts ranging from about $120,000 to about $160,000. The minimum value of the land as shown by this evidence offered by the defendant was about two dollars per square foot, and the maximum value was about five dollars per square foot. The value as shown by the plaintiff varied from about 30 cents per square foot to about 80 cents per square foot. There was a sharp and well defined conflict in the evidence which raised a simple question of fact for the jury to determine, and no one can read the record in this case and conclude that there was not ample evidence upon which to base the finding made by the jury, which fixed the value of the land somewhere in the neighborhood of 83 cents per square foot.

The jury having determined this fact the court has no power to interfere with the finding, unless it was manifestly against the weight of the evidence, which the court cannot say.

It is further claimed that the jury did not fix the value of two buildings upon the ground described as Parcel 4, although their verdict says—"Parcel No. 4 (69,700 square feet Wilstack to Liberty, Horne to Parcel 8) with buildings thereon, $73,185." In view of this verdict it is hard to see how such claim has any foundation, but counsel for the defendant claims that because the jury fixed the value of the ground described as Parcel 2 at $60,290.50, and Parcel No. 3 at $66,215, and Parcel No. 4, although it had two buildings thereon, upon which testimony was offered to show were worth $8,000, at only $73,185, it therefore follows that the jury did not take into consideration or fix any compensation for these buildings.

While the verdict is irregular in this respect in that the value of the buildings was not returned separate from the land, this irregularity was by agreement of counsel and cannot now be relied upon to set aside the verdict.

To sustain this claim would be a usurpation of the function of the jury and a complete contradiction of the express terms of the verdict.

It is claimed that a new trial should be granted for the reason that the C. & O. Railroad was not made a party defendant in this action in connection with the land described as Parcel 8 in the petition.

With reference to Parcel 8 the evidence discloses that some years before this proceeding was begun the C. & O. Railroad placed in Gerard avenue three or four tracks which took up the entire street; that the defendant in this case, Mr. Banning, brought a suit in the Superior Court of Cincinnati for an injunction against the C. & O. Railroad to prevent the railroad from occupying all of Gerard avenue with the tracks, and also for damage done to property of this defendant by reason of such occupation. A temporary restraining order was issued by the court and later a permanent injunction was issued and the question

of damages to this defendant was continued for future consideration by the court. After these orders had been made by the court the evidence in this case discloses that Mr. Banning made a lease with the privilege of purchase for certain land belonging to him west of and adjacent to Gerard avenue, and that by the terms of that lease he reserved to himself a right of way thirty feet in width, extending north and south from Liberty street to Flint street and described in the petition as Parcel 8, being just west of and contiguous to Parcels 2, 3 and 4 described in the petition; that the cause in Superior Court was a pending cause until 1921, and that between the inception of that cause, and 1921 the lease with the privilege of purchase was executed by Mr. Banning to the C. & O. Railroad Company, in which this thirty foot easement or right of way was reserved to himself, whereupon the Superior Court suit was dismissed, and the evidence is silent as to whether or not the option to purchase was exercised by the C. & O. Railroad.

The claim of the defendant is that under Sections 11042 and 11072 and 3, the C. & O. Railroad should have been made a party defendant and that the failure of the plaintiff so to do is ground for a new trial in this cause.

All of the facts, with reference to this easement or right of way and with reference to the outstanding lease, were fully known to the defendant at the time of the filing of the petition of the plaintiff, and at all times subsequent thereto, and at no time during the proceedings until after verdict did he make any objection either to the fact that the C. & O. Railroad was not a party or that the easement or right of way was not sufficiently described in the petition, nor at any time during the trial, but after the verdict for the first time raises this objection.

Appropriation of property by condemnation is covered in Chapter 5 of the General Code, Sections 11038 to 11091 inclusive. All of these sections must be read and construed in *pari materia*, and it is provided in this chapter that the fee or any interest or right may be appropriated,

and that the application or petition shall describe the parcel or the interest or right to be appropriated.

A careful consideration of these sections leads to the conclusion that only such parties need be made defendants as are unable to agree with the party seeking to appropriate, it being provided that the failure to agree is a prerequisite jurisdictional fact to be determined before appropriation can be had. If the contention of counsel is correct that there were several interests or rights in different persons and the fee simple to property in another, and the property was sought to be taken by appropriation, it would be necessary to make all the parties defendants even though the plaintiff had agreed with all of the outstanding interests except one, this would be to nullify the express provisions of this chapter on the jurisdictional question. To me it is entirely clear under this chapter that the fee or any interest less than the fee may be appropriated, and that no person need be made a party defendant in the appropriation proceeding unless the plaintiff and that defendant are unable to agree upon a price to be paid for that interest. In the absence of anything in the record to the contrary, it must be presumed that the plaintiff in this case has agreed with the C. & O. Railroad Company as to any interest or right which it may own in this thirty foot strip, and that therefore the Railroad Company was not a necessary party defendant.

In view of the conclusions the court is of the opinion that the motion for a new trial should be overruled.