396

 

**TENNESSEE GAS TRANSMISSION COMPANY, Plaintiff-Appellant, v. MATTEVI et, Defendants-Appellees.**

Ohio Appeals, Seventh District, Columbiana County.

No. 728. Decided February 9, 1956.

Harrington, Huxley & Smith, Youngstown, Moore & Moore, Lisbon, for plaintiff-appellant.

Kitch & Kendall, Salem, for defendants-appellees.

## OPINION

By PHILLIPS, PJ.

By an action filed in the Probate Court of Columbiana County plaintiff, a corporation, sought to appropriate a 692 foot strip of defendants' land situated in Center Township, Columbiana County, comprising .477 acres, and a temporary easement across such land, comprising 1.472 acres, for the construction and maintenance of a gas transmission pipe line.

The trial judge entered judgment upon the verdict of the jury for $5375.00 returned for defendant, and from that judgment plaintiff appealed to this court on questions of law.

The 692 foot strip, which enters defendants' 25.38 acre tract of land from Ohio State Route 172, cuts a triangular parcel of about seven acres off the easterly portion of such tract, which contained a deposit of coal, a running stream which crosses the highway at the apex of such triangle, two operating gas wells, a power line, and a right of way for highway purposes 892 feet long and between 55 and 70 feet wide.

There is evidence that the laying of plaintiff's pipe line prevents strip mining defendants' 25.38 acre tract of land as a unit; that regardless of the quantity of coal underlying the seven acre tract its isolation makes strip mining thereof at a profit impossible; and that stripable coal in such general area sells for twenty-five to thirty cents per ton depending upon the depth, quantity, quality and thickness thereof.

There is evidence of drillings on adjacent lands in the instant case which were in close proximity to several other drillings on defendants' land, and definitely establish a uniform pattern of existence and thickness of a seam of coal in the area in question.

While the evidence discloses that the remaining 18.38 acres of the original tract likewise can not be strip mined at a profit, yet as we

understand it this was not claimed as a basis of damage. We interpret defendants' claim for damages as based upon the impossibility of strip mining the entire tract as a unit.

Admitting that they had been advised by plaintiff's agent that the coal was not an issue in the case plaintiff's witnesses testified to a nominal appraisal of $300.00 and $202.00 respectively.

Defendant Mattevi placed the value of the rights in the land taken at $450.00, and the damage to the residue at $9050.00, or a total of $9500.00 because of the impossibility of strip mining the tract as a unit.

Defendants' witnesses testified respectively that the damages to the residue of defendants' land would be $7200.00, $1800.00 of which would be for the value of the coal under the land appropriated, and $5400.00 under the triangular shaped parcel of land; that the value of the rights in the land taken based on the coal underlying the land appropriated was $550.00, and the value of the residue on the triangular tract and the approach thereto on the west would be $7350.00, or a total of $7900.00.

The evidence is conflicting and contradictory as to the amount of coal underlying the 25.38 acre tract, and also under the triangular tract, and varies from a seam thickness of 24 inches situated 18 to 20 feet beneath the surface of the land to a 4 foot seam of coal situated 44 feet below the surface, to a 54 inch seam situated 63 feet below the surface, to 24½ inches situated 48 feet below the surface; that the coal contains between 7793 and 10216 BTU and 41% and 31% ash respectively, and 14298 BTU and 4.10% dry ash; and evidence of an indication of the presence of some mineral other than coal in such deposits.

Plaintiff contends that "the probate court erred in admitting testimony in regard to the presence of coal on property not owned by the" defendants, namely that coal was found in an oil well drilled on lands south of their property, and as to the thickness of coal on land on the north thereof, and argues:—

"It is the contention of the appellants that the above testimony was irrelevant and immaterial and that it was highly prejudicial to the interests of the appellant in this action. It is common knowledge and the evidence taken from drill holes in the affected area in this case demonstrates that the coal in this area is not consistent in thickness and therefore the inference which was created for the jury by this testimony was not justified and harmful to the appellant."

Defendants contend:—

"As pointed out in the summary of the testimony above the trial judge restricted the evidence of coal on lands not owned by appellees to evidence of drillings within 200 feet of appellees land. Two of the drillings on neighbor Bowman's land were made within 50 feet or so of appellee's land, i. e. the 7 acres isolated by the pipe line, and a third drilling was within 200 feet. Evidence of some 17 other drillings on Bowman's property was not introduced.

"It is a matter of common knowledge, and the testimony indicated, that coal is found in veins or seams which follow definite patterns and

are found in large areas. Such seams of coal do not respect property lines."

Defendants contend by brief:—

"It is well settled in Ohio that for the purpose of showing the existence, quantity and quality of coal in certain lands, it is competent to prove that seams of coal have been opened and mined upon other lands in the immediate vicinity and similarly situated, in connection with the opinions of witnesses skilled in the geological formations of the neighborhood that like seams exist on the land in question. **Stambaugh v. Smith, 23 Oh St 584 (1872).** * * *

"In the analogous case of determining damages for breach of covenant as to development of oil land, it has been held that evidence of the development and existence of oil on contiguous land is properly admitted. Empire Oil and Refining Company v. Hoyt, 112 Fed. (2) 356 (CCA Mich.)."

We find no error prejudicial to plaintiff in the respects charged in the assignment of error under consideration. The objection to testimony of the presence of coal in immediate contiguous lands of landowner Bowman goes to the weight and not the competency of such testimony.

Next plaintiff contends that "the probate court erred in not allowing evidence as to the purchase price of the appellee's property to be admitted on cross-examination of the appellee, Joseph Mattevi," which plaintiff argues was "extremely vital to the plaintiff, since Mr. Mattevi was allowed to testify that the 25 acre parcel involved in the appropriation action, only one-third of the farm which he had purchased. had a fair market value in 1954 of $30,000, even though the only building located on the 25 acre parcel was a hog pen which Mr. Mattevi valued at $25.00 to $30.00. Mr. Mattevi was also allowed to testify that the market value of his entire farm in 1954 was $75,000.00 to $80,000.00."

Defendants argue, in which argument we concur, that:—

"It appears to be general rule in the United States and in the State of Ohio, that evidence of the price paid for property which is the subject of appropriation proceedings is admissible, if the following conditions are satisfied:

"(a) The sale must be bona fide.

"(b) The sale must be voluntary, not forced.

"(c) The sale must have occurred relevantly in point of time; and

"(d) The sale must cover substantially the same property which is the subject of the appropriation action."

We believe that under the pleadings and the evidence the damages to the residue of defendants' land was limited to the damages to the twenty-five acre tract.

"When, in a proceeding to fix the value of real estate taken for public purposes, evidence is offered on cross-examination of the sale price of other land, its competency depends upon whether there was an actual sale sufficiently near in point of time, whether the other land is similar in character, location, and other circumstances relating to value,

and whether the sale was in a fair and open market, and this should be determined by the trial judge in the exercise of a sound discretion; and such determination will not be disturbed by a reviewing court, unless an abuse of discretion is shown."

We believe that the evidence of the price which defendants paid for their seventy-five acre farm nine years before the appropriation action, which proprty was substantially different than the parcel which plaintiff claims to be the subject of the appropriation action, and during which intervening period coal was discovered and mining commenced, was properly excluded, well within the sound discretion of the trial court.

Next plaintiff claims that "the property owners failed to submit sufficient evidence to sustain the burden of proof resting upon them as to special damages to the residue, to-wit: damages for loss of coal in the ground."

"It is the province of the jury to pass upon and weigh the evidence, and to pass upon the credibility of the witnesses. * * * Nor does the law countenance any invasion by the court of this province and function of the jury. * * *" **39 O. Jur., Section 138, Page 727.**

Plaintiff argues by brief that:—

"Thus it can be seen from the above review of the testimony that the property owners' witnesses consisted of one stripping operator, who did not have the equipment to do the job, a coal lease dealer, who was highly biased against the appellant, and the property owner himself; none of whom had any information as to the quality or marketability of the coal in question and all of whom were figuring on seven acres of coal. On the other hand, the appellant's witnesses as to the value of the coal in question were the only stripper who had a lease on the land and who abandoned it and a successful stripper who had the equipment to do the job but said it was physically impossible to do it and make a profit. The appellant contends that there is demonstrated a clear failure on the part of the property owner to carry the burden of proof which rested upon him and that accordingly the judgment in his favor should be reversed."

Obviously this court hearing an appeal on questions of law can but concur in the statement of defendant by brief that this court "is in no different position than the trial court, and cannot substitute its interpretation of the facts for that of the jury. The only level at which the relative merits of the disputed facts can be considered by the court is on the question of the manifest weight of the evidence."

We find no error prejudicial to plaintiff as charged in the assigned ground of error under dispute.

Finally plaintiff contends that "the verdict and judgment are contrary to the weight of the evidence as presented by the appellants and the appellees."

As suggested before the evidence is decidedly conflicting and contradictory on every issue in the case. The jury was in a much better position to determine the weight to be given to the evidence of the various witnesses than this court. The trial judge had the advantage, which this court does not have, of having seen and heard the numerous wit-

nesses and likewise is in better position, than is this court, to determine the weight to be given to the testimony of the witnesses. The trial judge did not, and we cannot disturb the verdict of the jury nor the judgment of the trial court entered thereon on the grounds that the verdict of the jury and judgment of the trial court are against the manifest weight of the evidence.

The judgment of the court of common pleas is affirmed.

NICHOLS, J, concurs in judgment.
GRIFFITH, J, concurs.