TOLEDO EDISON COMPANY, APPELLEE, *v.* ROLLER ET AL.,
APPELLANTS.

(No. 1083—Decided February 22, 1974.)

*Mr. Frank D. Guthrie* and *Mr. John C. Halleck,* for appellee.

*Mr. Arthur R. Cline,* for appellants.

WILEY, J. The plaintiff Toledo Edison Company, the appellee herein, appropriated acreage for an electrical transmission line across the 92 acre farm owned by defendants Michael E. Roller and Margaret J. Roller, the appellants. A judgment was entered on a verdict of $15,000 and it is from this judgment that the appeal was taken. The first assignment of error states:

"The court erred in excluding all evidence as to the sales prices of comparable easements over the same property and over neighboring property, and in refusing to permit appellants' expert to give his opinion of value of the Edison easement based upon such sales."

This assignment of error is not well taken. Testimony was admitted on behalf of the plaintiff as to the value of the property before the take and the value of the property after the take; the difference, according to one expert, was

$62,905.50, and according to the landowner, Michael Roller, was $75,000.00. Evidence of sales of comparable property was admitted but the assignment of error relates not to sales of comparable property, but to the sale prices of "comparable easements." No citations were given for the proposition that sale prices of easements were properly admissible to prove before and after value of the lands involved. In the trial of this case, the question was propounded of one of the defendants' appraisers concerning the sale price of an easement previously granted by the plaintiff over the same 92 acre farm for a pipeline easement. The court excluded the easement testimony for the reason that the pipeline easement and the electrical line easement were not comparable. Even if it could be considered comparable, such testimony was not admissible for the reason that it related specifically to the amount paid for an *allegedly comparable easement* and not to *comparable sales of land*. No Ohio authority was given for this rather novel proposition. At least one Ohio court has indicated a contrary view, in the case of *Columbus* v. *Zanes*, 120 Ohio App. 229 at page 232 where the court, in charging the jury, said this:

"The criteria for you to follow in determining the market value of this 1500 (*sic*) foot strip, as I said, would normally be the highest price that a willing buyer-seller would sell and purchase, *but since easements have no independent market value in themselves*, you will have to consider, in determining value, the use of the easement in the future that it has relating to use of the whole property remembering the rights given by the property owners to the city and the rights remaining to the property owners to use the property." (Emphasis added.)

Such evidence properly was excluded for the further reason that in Ohio and in many other jurisdictions, it is well established that sales to agencies having the power of eminent domain are not comparable and are not admissible as proof of fair market value. See *Ohio Power Co.* v. *Diller*, 18 Ohio App. 2d 167; *In re Appropriation by Ohio Turnpike Comm.*, 164 Ohio St. 377; *Masheter* v. *Yake*, 9 Ohio App. 2d 327; *Naftzger* v. *State*, 24 Ohio App. 183, and

29A Corpus Juris Secundum 1210, Eminent Domain, Section 273, Note 67.1.*

The defendants argue that their position is supported by *Masheter* v. *Hoffman*, 34 Ohio St. 2d 213, where evidence of comparable sales, on direct examination, was permitted. This case, in no way, changed the rule that sale prices of comparable real property is admissible as substantive proof of the fair market value of the property to be appropriated. The syllabus of that case clearly states that proof of such sales are admissible when *"* * * concluded between purchasers who were willing, but not required, to buy and sellers who were willing, but not required to sell."* (Emphasis ours.)

Rather than supporting the defendants' position, *Masheter* v. *Hoffman, supra*, supports the position of the plaintiff. Actually, the sole question before the court in that case was whether the law of Ohio excludes, on direct examination, the testimony of one's own expert witness as to the sale price of comparable real property as substantive evidence of the value of the land to be appropriated, rather than limiting such testimony to cross examination. At page 220, the court refers to the case of *Ohio Turnpike Comm.* v. *Ellis*, 164 Ohio St. 377, wherein the court held that it was not reversible error to admit, on direct examination, as bearing on the question of the value of the land to be appropriated, the price at which a board of county commissioners, not required to sell, sold comparable nearby land, where the bidding procedure did not constitute a forced sale. However, the court, in *Ellis, supra*, pointed out, by way of dictum, that if the trial court had rejected the evidence, no error would have been committed. The court, in *Masheter*, dis-

---

*The proffer made by the plaintiff of the price paid for the easements to the Dome Pipeline Co. did not indicate that this sale was voluntary or whether it was made to a condemner with the right of eminent domain. In the absence of any positive showing to the contrary, we assume that the Dome Pipeline Co. did have the right to eminent domain. The proffer did include not only the easement on the Roller property, but so-called comparable easements on acreage of other owners, without indicating precisely what the other acreage was.

agreed with the dictum of the court in *Ellis* and stated that the trial court would have erred had it excluded such evidence. *Ohio Turnpike Commission* v. *Ellis, supra,* however, like *Masheter* v. *Hoffman,* and the Ohio cases previously cited, stands for the proposition that it is evidence of comparable sales of land between a seller willing to sell and a buyer willing to buy that is admissible. See also 19 Ohio Jurisprudence 2d, Eminent Domain, Sections 163, 164. For the proposition that evidence of sale prices of other comparable real property is admissible on direct examination of one's own real estate expert as substantive proof of the value of the property under condemnation, where the conditions with respect to the other lands and to the sales thereof, are similar to those involved in the property under condemnation, see also *In re Appropriation for Hwy. Purposes,* 15 Ohio App. 2d 55.

As indicated in the defendants' brief herein, a growing number of jurisdictions now admit into evidence sales of comparable property to a condemnor under varying circumstances, such as where the sale was actually voluntary where there is a complete absence of any comparable sales, or even where an admittedly forced sale occurred. For this view, compare: *Frederickson* v. *Hjelle* (N. D.), 149 N. W. 2d 733; *Honolulu Redevelopment Agency* v. *Pun Gun,* 49 Haw. 640, 426 P. 2d 324; *Commonwealth Dept. of Highways* v. *McGeorge* (Ky.), 369 S. W. 2d 126; *State* v. *Voyich,* 142 Mont. 355, 384 P. 2d 765; *Bruce* v. *State Dept. of Pub. Works,* 93 R. I. 466, 176 A. 2d 846; *Texas Gas Trans. Corp.* v. *Fontenot* (La. App.), 133 So. 2d 841; *State* v. *McDonald,* 88 Ariz. 1, 352 P. 2d 343; *Collins* v. *Pulaski County,* 201 Va. 164, 110 S. E. 2d 184; *County of Los Angeles* v. *Faus,* 48 Cal. 2d 672, 312 P. 2d 680; *Amory* v. *Commonwealth,* 321 Mass. 240, 72 N. E. 2d 549; *Eames* v. *Southern New Hampshire Hydro-Elec. Corp.,* 85 N. H. 379, 159 A. 128; *Shaw* v. *Monongahela Ry. Co.,* 110 W. Va. 155, 157 S. E. 170; *Wateree Power Co.* v. *Rion,* 113 S. C. 303, 102 S. E. 331; *Curley* v. *Mayor and Aldermen of Jersey City,* 83 N. J. L. 760, 85 A. 197.

In the case of *Frederickson* v. *Hjelle, supra,* the court,

at 737, cites 5 Nichols, Eminent Domain, Section 21.33, at 465-468 (3d ed. 1962), as follows:

"* * * Evidence showing what the company seeking to condemn has paid for other lands would probably be taken by the jury as indicating the market value when, as a matter of fact, it does not tend to show the market value of the land. A company condemning land might be willing to give more than it is worth, and the owner of land might be willing to take less than it is worth, that is, less than its market value, rather than have a lawsuit. Moreover, when a company seeks to get land or condemn it for public uses, having the power to condemn, the landowner would probably come to some agreement with it rather than have a lawsuit, and this agreement would show a compromise rather than the market value of the land. * * *"

The court further cites *Nichols*, at page 738, as follows:

"There has been some dissatisfaction with the rule of exclusion set forth above and in some jurisdictions it has been held that such evidence is admissible if the land was in fact similar and it was shown that the transaction was not influenced by any fear of litigation. Thus, it was held in one case that the mere fact that one of the parties to a sale had the power to condemn does not of itself make the sale compulsory, at least where there had been no step taken to exercise such power before the sale was negotiated. * * *"

The divergent views in this area are also well stated in the case of *County of Los Angeles* v. *Faus*, 304 P. 2d 257, and 48 C. 2d 672, 312 P. 2d 680. The pros and cons are set forth as to whether evidence of sales of other lands is admissible when the purchaser has the right of eminent domain or is a condemner.

There is considerable logic to the views expressed in other jurisdictions that evidence of sales made to condemners should be admissible and the facts and circumstances surrounding such should go only to the weight of the evidence and not to its admissibility. On the other hand, there are many more jurisdictions in which the view is stated with

logic and clearness that sales made to a purchaser with the power of eminent domain or to a condemner are not voluntary and do not reflect the market value of the land to be appropriated. Ohio has adhered to the latter view for many, many years, and if any change is to be made in this area, it should be made by the Supreme Court of Ohio rather than by a Court of Appeals. Even if Ohio accepted the former view, under the facts of this case and for reasons stated above, the first assignment of error is, nevertheless, not well taken.

The second assignment of error is as follows:

"The court erred in excluding all opinion evidence of value based upon development and use of the land for residential purposes."

An examination of the record indicates that the assignment of error stated is too broad in that there was evidence of the potential use of the land for residential purposes. In the record, this question was asked:

"Q. Mr. Guthrie, at the time we recessed, we were talking about the site development of this property. In your opinion, what is the highest and best use of this property?

"A. Residential."

Again, the question was asked:

"Q. I believe you stated that the highest and best use of this property would be for residential purposes.

"A. That is my opinion, sir."

The witness explained that, in the site development theory of the market approach, he would estimate what the entire farm would sell for if it were divided into residential lots. He further stated that he would estimate what it would cost a developer to develop these lots, and the future he ended up with was what this developer could pay Mr. Roller in the open market for this land for residential purposes. An objection was made at this point, and the objection was sustained. A proffer was made that if Mr. Guthrie had been permitted to answer, he would have answered "$276 153." as the value before the Edison easement, and after the take on the Edison easement that the value of the

land would be $206,999, and that the difference would, therefore, be $69,164.

The attempt to introduce into evidence the value of the land if actually divided into residential lots was improper, and the court did not err in sustaining the objection to this specific line of questioning, in that the cost of development, plus other factors entering into the value of the land after development would be purely speculative. This was particularly true in that the land under consideration was not zoned residential, nor had any application for a change in zoning been made at the time of trial, as far as the record indicates. *Masheter* v. *Wood*, 36 Ohio St. 2d 175; *In re Appropriation*, 174 Ohio St. 441; *Bd. of County Commrs.* v. *Thormyer*, 169 Ohio St. 291; Cf. *In re Appropriation for Hwy. Purposes*, 15 Ohio App. 2d 131; *Masheter* v. *Mariemont, Inc.*, 36 Ohio App. 2d 78. This court finds that the second assignment of error is not well taken.

It further appears that the verdict of the jury was well within the low figures of the appraisers who testified on behalf of the defendant and the higher figures given on behalf of the plaintiff, and it further appears that substantial justice has been done the party complaining. On consideration whereof, the judgment of the trial court is affirmed at appellants' costs.

*Judgment affirmed.*

POTTER, P. J., concurs.
BROWN, J., dissents.

BROWN, J., dissenting. The first assignment of error concerns the exclusion of evidence as to sales prices of comparable easements to two separate pipeline companies over the defendants' property and neighboring property, and in refusing to permit the condemners' expert to give his opinion of the value of the Edison easement based upon such easement sales.

Determination of the rules for the admission of evidence that should be fashioned for appropriation proceed-

ings should always keep in focus the purpose and objective of eminent domain proceedings. The purpose is succinctly expressed in the 5th Amendment of the United States Constitution, and Section 19, Article I, and Section 5, Article XIII of the Ohio Constitution, that it is the judicial proceeding by which an owner of private property receives ''just compensation'' ''assessed by a jury'' when his property is taken for a public use.

Rules of exclusion of evidence are more likely to thwart this worthy constitutionally protected jury proceeding, and make it a game of hide and seek. By contrast, rules promoting the introduction of evidence are more likely to accomplish the objective of having a jury determine ''just compensation.'' Broad latitude for the admission of evidence in civil proceedings is the trend of the times. Cf. Fed. Rules Evid. 402, 403, 702, 703, 705.

The sale price of land and interests in real estate, including easements, sold to a condemner is admissible in evidence where there is no affirmative evidence that the sellers of comparable properties were compelled to sell. *Masheter* v. *Hoffman*, 34 Ohio St. 2d 213; *Curley* v. *Mayor and Aldermen of Jersey City*, 83 N. J. L. 760, 85 A. 197; *Township of Moorestown* v. *Slack*, 85 N. J. Super. 109, 204 A. 2d 23; *Eames* v. *Southern New Hampshire Hydro-Elec. Corp.*, 85 N. H. 379, 159 A. 128; *Wateree Power Co.* v. *Rion*, 113 S. C. 303, 102 S. E. 331; *Honolulu Redevelopment Agency* v. *Pun Gun*, 49 Haw. 640, 426 P. 2d 324; *State* v. *Levy*, 242 La. 259, 136 So. 2d 35; *Frederickson* v. *Hjelle* (N. D.), 149 N. W. 2d 733; cf. *Washington Home for Incurables* v. *Hazen* (C. A. D. C.), 70 F. 2d 847 (condemnee permitted to introduce evidence of comparable sale prices to condemner); *Nash* v. *D. C. Redevelopment Land Agency* (C. A. D. C.), 395 F. 2d 571 (condemnee allowed to introduce evidence of comparable sales to condemner).

Rules of law should be based on reason and logic, and the mere fact that one of the parties to a sale has the power to condemn does not, of itself, make the sale compulsory or unfair, and evidence of such sales to a condemnee should be admissible. *Covina Union High School*

*District* v. *Jobe*, 174 Cal. App. 2d 340, 345 P. 2d 78, citing *City of Los Angeles* v. *Cole*, 28 Cal. 2d 509, 170 P. 2d 928.

Instead of arbitrarily concluding that the sale to a condemner can never be a voluntary sale and, therefore, can never be of any assistance in determining the fair value of the land, it is much more logical and reasonable to approach this problem from the standpoint that all facts and circumstances should be taken into consideration, and that any objection to such evidence goes to its weight rather than its admissibility. 2 Wigmore, Evidence, 505, Section 463 (3rd. ed. 1940). Although such sales are less likely to have useful evidentiary value than sales to strangers, "no logical reason in principle is perceived why they should not have the same treatment." *City of Los Angeles* v. *Cole*, *supra*. Such comparable sale prices, it was stated, in *Masheter* v. *Hoffman*, 34 Ohio St. 2d 213, 221, "* * * are factors that would influence any reasonable and prudent person in making a determination of the market value of the land in question." The court said further: "In the interest of substantial justice, such factors should not be disguised and confused beneath outmoded and unreasonable procedure."

Because of the foregoing unassailable logic contained in *Cole* and *Hoffman, supra,* and in many other cases which could be excerpted, the legal conclusion, unsupported by facts or sound reason, contained in *Masheter, Dir. of Hwys.,* v. *Yake*, 9 Ohio App. 2d 327; *Naftzger* v. *State*, 24 Ohio App. 183; and *Cincinnati Union Terminal Co.* v. *Banning*, 27 Ohio Nisi Prius (NS) 548 (Hamilton County Court of Common Pleas), that sales to a condemner are not comparable nor admissible as proof of fair market value should not affect or control our determination. These three cases are not controlling judicial precedent upon this court of appeals, and are not persuasive authority because of an absence of facts and reasoning to support the bald assertion that negotiated sales to a condemner are not voluntary.

Plaintiff also contends that the burden of proving that the sale of a pipeline easement was between a willing buyer and a willing seller is upon the landowner, and cites

in support the cases of *Ornstein* v. *C. & O. R. R. Co.*, 26 Ohio Law Abs. 78; *State* v. *McDonald*, 88 Ariz. 1, 352 P. 2d 343; *Collins* v. *Pulaski County*, 201 Va. 164, 110 S. E. 2d 184; and *Amory* v. *Commonwealth*, 321 Mass. 240, 72 N. E. 2d 549. The *Ornstein* case, *supra*, nowhere in the headnotes or opinion states such proposition. *McDonald, supra*, an Arizona case, which we are not compelled to follow, comes close to saying that the burden of proof is upon the landowner to show that a sale to a condemner is voluntary, but not quite. In *McDonald*, headnote 4 of 352 P. 2d states: "In condemnation case, burden was on condemnee to establish foundation for admission of evidence of sale of neighboring property to government, and in absence of anything from which a lack of compulsion, coercion or compromise could be inferred, it was error to admit evidence of such sale."

In our case there was no evidence that the comparable sales to a condemning authority were compelled or coerced. A presumption of regularity should and does exist that a transaction is voluntary and normal until one of the parties introduces evidence to the contrary. This is a rule of reason. Why should a party have the burden to prove a negative or nothing, or the absence of coercion, until either party, by some evidence, raises the issue and then shifts the burden of proof to the party offering such proof of comparable sales, viz., in this case the landowners? The same observations are applicable to the *Collins* and *Amory* cases, *supra*.

Defendant, in arguing the foregoing proposition concerning a comparable sale to a condemning authority and that the sale must be voluntary and in the open market, relies on *Tennessee Gas Trans. Co.* v. *Mattevi*, 75 Ohio Law Abs. 396, and excerpts extensively from pages 399-400 of the opinion, that "whether the other land is similar * * * and whether the sale was in a fair and open market * * * should be determined by the trial judge in the exercise of a sound discretion * * *." This excerpt from the Columbiana County Court of Appeals opinion is a direct quotation from the defendant's brief in that case. The Court of Appeals did not state this as a proposition of law, and, by

quoting from the brief, did not make it the law controlling in that appellate district. Even if the court has made this a rule of law, it did not clarify the meaning of "open market" and did not affect the rule of admissibility of evidence concerning comparable sales. For the reasons discussed, I would conclude that the first assignment of error is well taken.

A query has been made as to the admissibility of the sale and sale prices of comparable easements because the rule as to admissibility of evidence of comparable sales and sale prices concerns the sale in fee simple of a unit of land or a unit of developed real estate and not the sale of an easement or limited interest in real estate. It is true that a quantum of real estate and its title for an easement differs factually from the quantum of a fee simple title for the sale of a unit of land or developed realty. However, there is no reason in law or logic to treat these differently and to make the rules contrary to one another for the admissibility of evidence of comparable sales thereof. *Wateree Power Co.* v. *Rion*, 113 S. C. 303, 102 S. E. 331; 27 American Jurisprudence 2d, Eminent Domain, Sections 323 (n. 13-16), 344, 430; 29A Corpus Juris Secundum 424, 601 Eminent Domain, Sections 105(1) and 143; Annotation 85 A. L. R. 2d 110, 171, Section 10(b).

The second assignment of error is that the court erred in excluding all opinion evidence of value based upon the development and use of the land for residential purposes. The evidence in the present appropriation of the Roller farm reveals that already there were home sites on the Roller farm; that a plated addition, known as the village of Dowling, adjoins the northwest portion of the farm; that across the road was a school, church and cemetery; that a golf course was close, and that there were many residences all through the area besides the village of Dowling, and that a rectangular portion of approximately 1,000 feet by 700 feet of the Roller farm is already zoned residential. All the cited circumstances are indicative that there is a reasonable probability of a change in the zoning classification of the Roller farm from agricultural to resi-

dential, if it is requested. Proper residential use in a rural, agricultural area is no more odious nor undesirable to the legislative authority or the surrounding area landowners than an agricultural use. The second assignment of error is well taken, and it was error to exclude expert opinion testimony of residential use and value based upon the development site theory because of the following applicable propositions of law.

In the determination of market value of land which has been condemned, and awarding just compensation therefor, existing zoning restrictions should be taken into consideration, but where there is some plausibility as to a change of an existing zoning resolution which affects the value of property being condemned, it is proper for the jury, under appropriate instructions, in estimating the value of such land, to consider the reasonable probability of a change of the zoning resolution and the reasonable influence on the market value of such probability. *Budney* v. *Ives*, 156 Conn. 83, 239 A. 2d 482; *Sayers* v. *Mobile*, 276 Ala. 589, 165 So. 2d 371.

A general change in the character of the use of property in the neighborhood has been held to show a reasonable probability of a change in zoning. *Park District of Highland Park* v. *Becker*, 60 Ill. App. 2d 463, 208 N. E. 2d 621; *Hall* v. *West Des Moines*, 245 Iowa 458, 62 N. W. 2d 734. The plaintiff relies heavily upon two appellate decisions: namely, *Bd. of Edn.* v. *Graham*, 15 Ohio App. 2d 196, and *Euclid* v. *The Lakeshore Co.*, 102 Ohio App. 96, paragraph 7 of the syllabus. These cases are distinguishable because there was no evidence that would indicate any purpose on the part of the public authority or the slightest probability that the zoning authority would, within the foreseeable future, lessen the use restriction. *Euclid* v. *Lakeshore, supra* at page 110. Further, these are appellate decisions from other appellate districts and are not binding upon us. They do not contain reasoning to persuade the conclusions reached therein. The nature and process of determining market value, as demonstrated by the general trend and the weight of authority, compels a

conclusion that the *Graham* and *Lakeshore* cases, *supra*, are inapposite to the facts in the *Roller* case.

The remaining cases cited by plaintiff in support of its second assignment of error—namely, *Preston* v. *Stover Flying Service*, 174 Ohio St. 441; *In re Appropriation for Hwy. Purposes*, 15 Ohio App. 2d 131; and *Bd. of County Commrs.* v. *Thormyer*, 169 Ohio St. 291—do not consider the legal issue involved in the second assigned error and are, therefore, inapplicable.

The recent case of *Masheter* v. *Wood*, 36 Ohio St. 2d 175, is distinguishable and inapplicable. It held that in appropriation proceedings, *opinion* testimony of an appraiser as to the reasonable probability of a zoning change and a higher and more valuable use classification is not competent because it is too speculative as to future administrative action.

The opinion and reasoning in *Wood, supra*, reveals that the holding should be limited to the facts in that case. The opinion reveals that (1) the zoning change considered as probable was from a residential to a business use—*i. e.*, from a more restricted use to a less restricted business use —and (2) no facts were stated which indicated any factors, such as a change in land use in the area or prior rezoning activities, which would indicate any likelihood of a zoning change.

By contrast with *Wood, supra*, the transcript of proceedings in our case reveals: (1) The zoning change considered as probable to serve as a basis for the site development value was from an agricultural to a residential use— *i. e.*, usually considered for practical purposes as a change from a less restricted use to a more restricted use, the exact opposite of the situation in *Wood, supra*— and (2) many factors were proven by the landowner, such as a change in land use in the area and prior rezoning activities, which would indicate a likelihood of a zoning change.

Furthermore, in *Wood, supra*, the Ohio Supreme Court held that it was error for the trial court to admit *opinion* testimony of the landowner's appraisers that a zoning change was probable from residential to business classifica-

tion. By contrast, in this case that was not the issue, and defendants did not attempt to proffer an expert opinion through an appraiser that a zoning change was probable.

The proffered evidence by the landowner as to value based on the site development theory was properly admissible by the guidelines set forth in *Wood, supra*, at 178, which states as follows:

"An expert witness may testify as to those factors within his particular knowledge and expertise which would indicate the likelihood of a zoning change, such as a change in land use in the area, prior rezoning activities, or sales prices of comparable properties which are higher than their present use would justify."

The exodus consideration is whether the errors of the trial court are prejudicial and thus warrant a reversal and new trial, or are non-prejudicial and thus call for an affirmance of the judgment. This is a judgment call. It should be noted that the jury verdict of only $15,000 is many times closer to the value and damage figures given by the two appraisers for the plaintiff, Toledo Edison, than to the figures given by the landowner, Roller, and his two appraisers. It is my view that the jury received only part of the proper loaf of evidence of values and damage legally admissible and the amount of the jury verdict indicates that a higher jury verdict was likely and justified if the jury had the entire loaf of evidence to which it was entitled. I would conclude that either of the two errors is sufficiently prejudicial so that the judgment should be reversed and a new trial granted.