**EUCLID (City), Plaintiff-Appellee, v. LAKESHORE COMPANY et, Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23610.   Decided March 22, 1956.

354

Paul Torbet, Director of Law, Euclid, Perry L. Graham, for plaintiff-appellee.

Thompson, Hine & Flory, Charles W. Sellers & David C. Prugh, of Counsel, Ford, Reece, Howland & Wegman, John Howland, of Counsel, for defendants-appellants.

## OPINION

By SKEEL, J:

This appeal comes to this Court on questions of law from judgments entered on separate verdicts of a jury in separate proceedings of the trial to determine the value of five parcels of land appropriated for park purposes by the City of Euclid. As the proceedings were initiated by the City, seven parcels, all contiguous, with a total frontage of about nine hundred feet on the north side of Lake Shore Boulevard just east of East 226th Street and extending northerly to Lake Erie, a distance of about seventeen hundred feet, were included in the resolution. The City, by its Council, passed a resolution on November 17, 1952, as authorized by §719.04 **R. C.**, declaring its intention to appropriate the property described, the purpose for which the property was to be taken, the persons to be notified and the interest to be appropriated. Thereafter on March 15, 1954, after all procedural requirements as prescribed by §719.05 **R. C.**, to perfect the appropriation of the property for park purposes, had been complied with, the City Council of Euclid passed Ordinance 10299 as provided by §719.06 **R. C.**, authorizing the Law Director to file this action to appropriate a part of the property described in the original resolution. The land to be taken was a contiguous tract of about twenty-five acres described in four parcels according to ownership as shown by the public records. Parcel No. 1, recorded in the name of the defendant, The Lakeshore Company, by deed dated December 21, 1951, from the defendant, Eugene E. Vogelin, has a frontage of about four hundred feet on the northside of Lake Shore Boulevard and is directly east of the front part of Parcel No. 2, recorded at the time the petition was filed in the name of the defendants, Benjamin and Lillian Zevin. Parcel No. 2 (subsequently divided) recorded in the names of defendants Zevin has a frontage of about two hundred ninety nine feet on Lake Shore Boulevard and extends about seventeen hundred feet to the shore of Lake Erie. This parcel was divided into Parcels Nos. 2A and 2B, the front part (Parcel No. 2A) (which was transferred from the defendants Zevin to The Lakeshore Company on the registered title records of Cuyahoga County after the filing of this case) is located on Lake Shore Boulevard as above described and has an average depth of about eight hundred feet. Parcel No. 2B is the northerly part of the Zevin property with a frontage on Lake Erie of about three hundred twenty five feet and is about nine hundred feet deep. Parcel No. 3, in the name of Robert J. and Irma Bradley, is seventy-five feet wide on its southerly boundary and is seven hundred thirty three feet deep, its north boundary fronting on Lake Erie, and, before being deeded to the Bradleys, was the northeast corner of the property of the defendants Eugene E. Vogelin and his wife. Parcel No. 4 is that of the defendants,

Eugene E. Vogelin and his wife, which is bounded on the south by Parcel No. 1, which these defendants sold to The Lakeshore Company, on the west by Parcels Nos. 2A and 2B, originally all in the name of the Zevins, on the north by Lake Erie and on the east in part by Parcel No. 3. Parcels Nos. 1, 2A, 2B, 3 and 4, together comprise a contiguous tract of land of about twenty-five acres with a frontage of about seven hundred feet on the north side of Lake Shore Boulevard, being about seventeen hundred feet deep and having a somewhat wider frontage on Lake Erie. The Bradley's deed provided for an easement over the Vogelin's property for ingress and egress and utility services to Lake Shore Boulevard. The Vogelins retained like privileges for themselves and the Bradleys over Parcel No. 1 when it was deeded to The Lakeshore Company. The Zevins retained an easement for ingress and egress and for utility services to Lake Shore Boulevard for Parcel No. 2B, over Parcel No. 2A when Parcel 2A was deeded by them to The Lakeshore Company.

The zoning restrictions of the City of Euclid, dealing with this property at the time of trial and for many years prior thereto (1927), provided for U-3 use (multi-family dwellings) for the frontage of the property on Lake Shore Boulevard to a depth of one hundred fifty feet and for U-1 use (single family dwellings) for the balance of property north of the one hundred fifty foot strip to the shore of Lake Erie.

The property on the south side, or across Lake Shore Boulevard from the property taken by the City in this action, from East 218th Street to East 232nd Street, is zoned for and has for a number of years past been used for retail business as are a few properties on the north side of Lake Shore Boulevard between East 218th Street to East 224th Street, the last mentioned business properties being two blocks west of the property here being taken. With this exception and two or three others of long standing, the property on the north side of Lake Shore Boulevard from the east border to the west border of the City is used as zoned for single family dwellings north of the one hundred fifty foot strip fronting on Lake Shore Boulevard. This strip was zoned for multi-family dwellings until the amendment of 1955 when most of the frontage was changed to U-2 use (two-family houses). There is no evidence in the record that would indicate that there is the slightest probability that the city authorities will lessen the use restrictions of its zoning ordinances in the neighborhood in whch the property here appropriated is located. The property of the defendants is lakefront property originally used as country estates and surrounded by single family dwellings and apartments, some of the garden-type, and two-family houses fronting on the Boulevard. The zoning ordinances of the City of Euclid have maintained the standard of this territory as a residential area and there is not the slightest evidence that within the foreseeable future any lessening of use restrictions will occur.

Upon trial, the jury by its separate verdicts, found the value of each of the several parcels as follows:

| | |
|---|---:|
| Parcel No. 1 —The Lakeshore Company | $60,000 |
| Parcel No. 2A—The Lakeshore Company | 47,500 |
| Parcel No. 2B—Benjamin D. and Lillian C. Zevin | 55,000 |
| Parcel No. 3 —Robert J. and Irma Bradley | 23,000 |
| Parcel No. 4 —Eugene E. and Marian Vogelin | 37,500 |

In each instance the jury's verdict was for the highest value given by the city's expert witnesses, there being no other testimony on the subject of value, the defendants' experts not being asked to testify as to their opinion of the value of the various parcels when considered for the highest and best use for which the property was zoned.

The claims of error presented on the appeal of The Lakeshore Company are:

"1. The Trial Court erred in ruling that the Court had jurisdiction to hear the appropriation proceedings despite failure of the City of Euclid to comply with the statutory requirements prescribed for municipal appropriation proceedings."

"2. The Trial Court erred in refusing to permit Defendant-Appellant to introduce testimony as to the fair market value of the property to be appropriated unless such testimony was limited to the value of the property for uses permitted under current zoning restrictions."

"3. The Trial Court erred in refusing to instruct the Jury in accordance with defendant-appellant's requested instructions I to XI, Inclusive, XIII, XIV, and XVII."

Each of the appellants assign the same errors.

The first assignment of error deals with the jurisdiction of the court to determine the value of the property taken for the alleged failure to comply literally with §§719.04, 719.05 and 719.06 R. C. These sections provide:

"Sec. 719.04 R. C.

"The legislative authority of a municipal corporation shall, whenever it is deemed necessary to appropriate property, pass a resolution declaring such intent, defining the purpose of the appropriation, and setting forth a pertinent description of the land and the estate or interest therein desired to be appropriated."

"Sec. 719.05 R. C.

"The mayor of a municipal corporation shall, immediately upon the passage of a resolution under §719.04 R. C., declaring an intent to appropriate property, for which but one reading is necessary, cause written notice to be given to the owner of, person in possession of, or person having an interest of record in, every piece of property sought to be appropriated, or to his authorized agent. Such notice shall be served by a person designated for the purpose and return made in the manner provided for the service and return of summons in civil actions. If such owner, person, or agent cannot be found, notice shall be given by publication once a week for three consecutive weeks in a newspaper of general circulation in the municipal corporation, and the legislative authority may thereupon pass an ordinance by a two-thirds vote of all members elected thereto, directing such appropriation to proceed."

"Sec. 719.06 R. C.

"The solicitor of a municipal corporation shall, upon the passage of an appropriation ordinance under §719.05 R. C., make application to the court of common pleas or to a judge in vacation, or to the probate court in the county in which the land sought to be taken is located, which application shall describe, as correctly as possible, the land to

be appropriated, the interest or estate therein to be taken, the object proposed, and the name of the owner of each lot or parcel thereof."

No complaint is made as to the resolution adopted by the Council on October 25, 1952, as the initial step in taking a fee simple interest in the property described for park purposes.

There is no question but that notice was given as required by §719.05 R. C., supra, and that subsequently the City Council passed the appropriation ordinance authorizing the Law Director to file application in the Common Pleas Court as directed by §719.05 R. C., supra, to take four of the seven parcels described in the resolution, setting forth in the ordinance a description of the land by parcels, the interest to be taken as to the entire tract, naming the owner of each parcel at the time the ordinance was passed.

The complaint of each appellant is that the easements recorded in the owners of Parcels Nos. 2B, 3, and 4, over or in Parcels Nos. 1, 2A, 3, and 4, were not set forth in either the resolution passed in October 1952, or the ordinance authorizing the filing of the application to appropriate the land. It is, therefore, claimed that the right to take a valuable interest (the easements) not being included in the legislation required to authorize the appropriation proceedings in this case, the court was without jurisdiction to proceed to fix the value of the property taken.

Both the statute providing for the passage of the resolution declaring the intent to appropriate property and the statute authorizing the filing of the petition to appropriate the property and to determine the value of the property taken provide that a pertinent description of the land and the interest to be taken shall be set forth. This means the interest (in this case, a fee simple interest) to be appropriated, not the interest to be taken from any particular owner. All that is required as to the several owners, if there be more than one, is that notice in writing be given to persons having an interest of record in the manner of service and return of summons in civil actions. The character of the interest in a particular parcel need not be set forth.

The object of the proceeding in appropriation is to determine the value of the property taken. If a fee simple interest in all the property is to be taken, then the full and complete value of each parcel must be found by the jury. In the case of Emery v. City of Toledo, 121 Oh St 257, the second paragraph of the syllabus provides:

"In such appropriation proceedings the only issue relates to the value of the property."

In the case of Sowers, Supt. v. Schaeffer, 155 Oh St 454, the court said in the first paragraph of the syllabus:

"A land appropriation proceeding is essentially one in rem; it is not the taking of the rights of persons in the ordinary sense but an appropriation of physical property. In the event there are several interests or estates in the parcel of real estate appropriated, the proper method of fixing the value of each interest or estate is to determine the value of the property as a whole, with a later apportionment of the amount awarded among the several owners according to their respective interests, rather than to take each interest or estate as a unit and fix the value thereof separately. The separate interests or estates as between the condemner and the owners are regarded as one estate."

Likewise in the case of **Sowers, Supt. v. Schaeffer, 152 Oh St 65, the** Supreme Court said in the second paragraph of the syllabus:

"A proceeding to appropriate property for a public use is essentially in rem, and where property is sought in which separate interests or estates are owned by several persons as between the condemner and the owners it is regarded as one estate and one offer or award as compensation for the entire land and the interests connected therewith is made, which sum takes the place of the property appropriated as the equivalent thereof. The division and distribution of the sum offered and accepted or of the award made among the owners of separate interests or estates rests wholly with them, and the condemner has no concern therewith."

and on page 69, Judge Zimmerman said:

"An appropriation proceeding is essentially one in rem; it is not the taking of the rights of persons in the ordinary sense but an appropriation of physical properties. In the event there are several interests or estates in the parcel of real estate appropriated, the proper method of fixing the value of each interest or estate is to determine the value of the property as a whole, with a later apportionment of the amount awarded among the several owners according to their respective estates. rather than to take each interest or estate as a unit and fix the value thereof separately. Hence, separate interests or estates, as between the condemner and the owners, are regarded as one estate. One award constitutes compensation for the entire value of the land and it stands in the place of the property appropriated as the equivalent thereof. The division and distribution of the award among the owners of separate interests or estates rests wholly with them, and the condemner is not concerned therewith. Bogart v. United States (C. C. A. 10), 169 F. (2d), 210; City of St. Louis v. Rossi, 333 Mo., 1092, 64 S. W. (2d), 600; 69 A. L. R., 1263, annotation; 166 A. L. R., 1211, annotation; 29 Corpus Juris Secundum, 1102, Eminent Domain, Section 197. Compare **Martin v. City of Columbus, 101 Oh St 1, 127 N. E., 411.**"

and on page 70, Judge Hart, in a concurring opinion, says:

"* * * Thus in a single action a single award may be made to the holders of the fee, lienholders, lessees, **easement holders** or holders of any equitable title or interest in the tract or parcel of land. 29 Corpus Juris Secundum, 1102, 1103." (Emphasis added.)

The appellants cite the case of **Rockwell v. Turnpike Comm., 98 Oh Ap 199,** as authority that an easement must be separately taken in an appropriation case. In that case a drainage easement was needed on property outside the turnpike right of way. There was also a claim for damage to the residue owned by the defendant, the residue being the same land through which drainage pipes were to be constructed. These facts are totally different from those in the case before us where the land taken includes all the lands subjected to the easements and also all lands benefited by such easements.

One other fact is claimed by the appellants as destructive of the court's jurisdiction to proceed with the trial of this case. After this action was commenced, the defendant, The Lakeshore Company, claimed

to be the owner of Parcel No. 2A, although the Torrens Title was still in the Zevins. The Lakeshore Company brought an action to enjoin further proceedings because it was claimed by said defendant that it was then the owner of both parcels Nos. 1 and 2A (contiguous parcels), having a total frontage of seven hundred feet on Lake Shore Boulevard, and that for some purposes the land when considered as one parcel was of greater value than the sum total of its component parts considered separately.

Upon trial of the injunction case, the court granted a conditional restraining order preventing the appropriation case from proceeding unless an amended petition was filed showing title to Parcel No. 2A transferred from the Zevins to The Lakeshore Company. The plaintiff then amended its petition as directed by the court and the injunction was dissolved. Error is now prosecuted to this Court from the order dissolving the restraining order by separate appeal which will be separately considered.

We hold here that amending the application or petition before the case was set for trial which came about because of the demands of the defendant, The Lakeshore Company, in no way divested the trial court of jurisdiction to proceed to determine the value of the properties taken. This conclusion is bottomed on the facts of the case. The Zevins' property was torrenized. The fact that some information had come to the city that it was the intention of the Zevins to transfer title to Parcel No. 2A to The Lakeshore Company does not change the fact that when the legislation was passed and the application was made to the court seeking to appropriate this property, the registered title was in Benjamin D. Zevin and his wife. They were, therefore, necessary parties to the action involving Parcel No. 2. Where registered titles are taken, only the registered owner is a necessary party. **Sec. 5309.28 R. C.** It might also be here stated that the easement created over Parcel No. 2A for ingress and egress and utility services for Parcel No. 2B was not created until after this action was brought, such right being created in the deed from the Zevins to the syndicate and by them to The Lakeshore Company. Without here deciding the question of whether The Lakeshore Company had any legal right to enjoin the prosecution of a pending proceeding to determine the value of property being taken by appropriation for the reason that after the action had been begun, it became the holder of the legal title to an additional parcel which parcel was already included and described in the enabling legislation and petition, claiming that the value of both, when held together by one owner, is greater than the total value of each parcel valued separately, we hold that the amendment, requested by the defendant, when made showing the change of ownership in the properties to be taken from persons already defendants in the action, did not divest common pleas court of jurisdiction to proceed to fix the value of the property.

The defendants rely strongly on the case of **Grant v. Village of Hyde Park, 67 Oh St 166.** The facts of this case are clearly distinguishable. The statute by which municipal corporations exercised the right of eminent domain at the time of the Hyde Park case provided for the passage of but a single ordinance by which private property could be

appropriated for public use. The passage of such an ordinance constituted the "taking." As said on page 173 of the opinion:

"* * * It (the ordinance) seeks to acquire that precise property, or, putting it in different form, it has already appropriated the property described for the proceeding in court is one simply for ascertainment of the amount of compensation to be paid the landowners."

After the ordinance had been passed and the case filed to fix the value of the property taken and damage to the residue and the case was on trial, some evidence was offered tending to show that the City Council passed an ordinance authorizing the city solicitor to stipulate that the City, in constructing the street over the property appropriated, would not establish the grade of the new street that would require taking a deeper cut in the land taken of more than five feet. This was done because the evidence tended to show that there would be no damage to the residue unless the grade of the street required a deeper cut than five feet. Any such stipulation would change or lessen the rights of the village by its resolution to take the property in question. Such resolution, when passed, contained no limitations or qualifications. The Supreme Court said in paragraphs two and three of the syllabus:

"2. The question of what is to be appropriated is determined by the resolution of the council and the application filed in court in conformity therewith. And where the application makes a general demand for an appropriation for street purposes, and prays that a jury be impaneled to make inquiry into and assess the compensation to be paid the landowners, and the inquiry proceeds on such application without amendment, the effect of the judgment of condemnation is to give to the municipality the right to use the land taken for all street purposes, including the right to establish a reasonable and proper grade. Hence, the question of probable future grade of the street is a proper subject of inquiry in the ascertainment of damages to the residue of the land.

"3. The council of such municipality has not power, by an ordinance passed while the condemnation suit is being tried, to change the terms of its resolution and of its application so as to ask to appropriate more or less than is therein demanded."

The defendants stress the claim that because Parcels Nos. 1, 2A, and 4 are subject to easements for ingress and egress and public utility services for the benefit of parcels 3, 4, and 2B, that in the event the City should take only Parcels Nos. 1 and 2A, the easement rights of the owners of Parcels Nos. 3, 4, and 2B over Parcels Nos. 1 and 2A. would be cut off to their irreparable damage. Such assumption is without legal foundation. The physical facts as to the location of the parcels indicates that when the defendants, Vogelin, deeded Parcel No. 3 to the Bradleys, the only means of ingress and egress was over the land of the grantor and at the time of filing the deed, an established roadway was in use and utility connections in place. These same facts are true as to Parcel No. 1 when deeded by the Vogelins to The Lakeshore Company and as to Parcel No. 2A when deeded to The Lakeshore Company by the Zevins. True, all necessary easements were provided for by the respective deeds but this does not mean that all three lakefront owners would otherwise be barred from the right to reach a public highway

over the servient estate of the respective grantees. In the case of **Jones v. Bethel, 20 Oh Ap 442,** in considering this question, the Court said in **paragraphs** 2, 3, and 4 of the syllabus:

"2. Where private way was constructed on one part of single tract, and was open, apparent, and in use at time of division of tract, and reasonably necessary to enjoyment of part not covered by way and materially adding to its value, a grant of way in favor of such part arises by implication.

"3. Situation of parties at time single tract is divided determines grant by implication of private way in favor of part of tract not covered by way.

"4. In determining whether grant of private way may be implied in favor of land owned by plaintiff which was part of single tract with defendant's land containing way, it is immaterial whether plaintiff may get to part of tract touched by way through other land owned by him."

Also, in the first and second paragraphs of the syllabus of the case of Mosher v. Hibbs, 1 C. C. N. S. 49, the court said:

"1. Where the owner of a body of land, during his occupancy of it, constructs a private way over one part of it to another, as a means of egress and ingress to the latter from the public highway, which way is apparent, continually used and reasonably necessary to the use and enjoyment of the land to which the way is constructed, and also adds materially to its value, and afterwards sells and conveys by deed the part with the way to it, and retains the part with the way over it, his grantee takes his part, to be enjoyed with reference to the way as the same existed at the time of the conveyance, with an implied grant of the way to it over that retained by the grantor, as an easement therein.

"2. Such private way is an appurtenance to the tract conveyed, and the right thereto passes without being expressed in the deed."

The rights of way provided for by the respective deeds would have come into being as a right of necessity by law, an appurtenance of the dominant estate in each case and as a legal obligation of the servient estate; and the taking of the servient estate does not destroy the easement of necessity even though the contract right is taken in the appropriation of the fee simple interest. Public policy will not permit the cutting off of an easement of necessity.

In the case of State, ex rel. McNutt v. Orcutt, 211 Ind. 523, 199 N. E. 595, the court said:

"8. In condemnation proceedings by the state to take a portion of a fruit and berry farm, over which a way of necessity as means of egress and ingress to the remainder was in use, the fact that the way had been closed by gates or bars except during the fruit and berry season when the way was open for the public would not restrict the right of the owner of the dominant estate to keep the way open if such was necessary for a fair enjoyment of the remainder for the purposes for which it was used.

"9. Where a reservation of a way of necessity over land appropriated by the state is implied for the use and enjoyment of the remainder of the land, the character of the way will not be controlled by any temporary or provisional arrangement or use, but will be established by the necessity for the use to which the land has been accustomed."

The verdict of the jury as to each parcel taken, having given consideration to the value of the parcels as affected by the respective easements, this claim of error must be overruled.

We come now to consider the defendants' second claim of error. The court, over the objection of the defendants, limited the evidence of the value of the properties taken to the highest and best uses for which it was available within the zoning restrictions. It is the contention of the defendants that the expert witnesses should have been permitted to take into consideration both the present uses to which the property could be legally devoted and its most valuable use or highest and best use when considered in the light of reasonable and probable zoning changes at some indefinite but closely related time in the future. The defendants bottomed their contention on the claim that the zoning ordinances of the City of Euclid are antiquated, that the neighborhood is experiencing a rapid and continuing growth far beyond that of other parts of the county, that there is need for further retail development in the area and that this property is situated similarly to other property in the neighborhood (across the Boulevard) now zoned for retail business, the change to retail business classification of such other property being of recent date. It is claimed that the expanding population of the neighborhood requires multi-family units and that this property is one of a very few large plots left in the area which could be accommodated to such development. The defendants' expert witnesses testified that the "best use" for Parcels Nos. 1 and 2A was for retail business and the balance of the property for multi-family dwellings.

In support of the court's ruling limiting evidence of value to uses within the zoning restrictions, the City cites the history of its zoning laws in maintaining almost without change its residence districts, and that the property involved here is lakefront property. The evidence shows that all of the lakefront property from the southern shore of Lake Erie to Lake Shore Boulevard is zoned for single family dwellings except the property fronting on the Boulevard in most instances to a depth of one hundred fifty feet which is zoned for multi-family units. This depth has been extended one or two hundred feet in one or two instances for a garden-type multi-family development. The only retail business now allowed on the north side of Lake Shore Boulevard, near the property taken as shown by the evidence, is between 218th Street and 224th Street. As was stated above, there is no evidence in this record that would indicate any purpose on the part of the public authorities or the slightest probability that the City will within the foreseeable future lessen the use restrictions of its zoning ordinance dealing with its lakefront property nor does any trend of development in the neighborhood where this property is located indicate that in the foreseeable future a plan of city development of single homes will in the interests of city planning require changes causing greater congestion and increased traffic hazards on its public thoroughfares. It could be argued that the rapid growth of this city of homes came into being because of the zoning protection of the householder. In all events a city is not required to lessen its zoning standards because of increased demands for home sites

in the community and such demands cannot be the foundation for a claim that reasonable administration of the zoning laws would require a reduction of zoning classifications to make way for a greater concentration of the population. Only where zoning restrictions fall into disuse can such claims be made.

The determination and fixing of zoning classifications of the territory of a city is within the sound discretion of its legislative authority in the exercise of its police power to protect the public health, morals, safety and the general welfare of the people. **Cleveland Trust Co. v. Village of Brooklyn, 92 Oh Ap 351.** To speculate on what may be the legislative policy of a municipal council of a city or village in the future in changing a particular zoning classification when considered for the purpose of fixing the value of land taken for public purposes is of such a speculative character that a court should not permit such evidence of value of the property to be presented in the trial of a condemnation proceeding. The question has not been dealt with as yet by the reviewing courts of this state but at the last session of the Legislature, §719.09 R. C., was amended to read:

"The assessment of compensation by a jury as provided in §719.08 R. C., shall be in writing signed by the jury and shall be so made that the amount payable to the owners of each lot or parcel of land be ascertained.

"In arriving at such assessment of compensation for such lot or parcel, any use or occupancy which is in violation of any statute or ordinance be excluded from consideration in determining fair market value."

Certainly the legislative policy of the state has been clearly fixed by this statute although such statute is not directly applicable in this trial.

The evidence shows that the defendants gave no consideration to possible zoning changes in dealing with Parcels Nos. 1 and 2A as shown by revenue stamps on the respective deeds introduced by them as evidence in the case. As to Parcel No. 2A, the revenue stamps were in the amount of $64.35, indicating a value of a little under $60,000. The jury's verdict as to the value of this parcel was $47,800. The value as shown by defendant, The Lakeshore Company's expert witnesses, as tendered into the record, was about $280,000, as shown on page 11 of this defendant's brief. The transfer of title took place just before the trial.

There being no evidence to support the contention that within the reasonable foreseeable future and in the reasonable administration of the zoning laws of the City of Euclid, a reduction of the zoning classification of the property taken in these proceedings will be likely to occur and likewise, by reason of the legislative policy of this state in declaring such evidence inadmissible in an appropriation case, we affirm the trial court in limiting the expert evidence as to the value of the several parcels taken to the highest and best use when considered for the uses permitted within the zoning ordinance applicable to such property as of the date of the trial of the case.

Coming to this conclusion, the third claim of error must be likewise overruled.

For the foregoing reasons, the judgments fixing the value of the several parcels are affirmed.

Exceptions. Order see journal.

KOVACHY, PJ, HURD, J, concur.