The State, ex rel. Mumma et al., *v.* Stansberry, Supt. of Bldg. Inspection.

(No. 2803—Decided March 9, 1964.)

*Messrs. Altick & McDaniel*, for relators.
*Mr. Herbert S. Beane*, city attorney, and *Mr. Joseph P. Duffy*, for respondent.

Kerns, P. J.   This is an original action in mandamus. The relators, Todd Mumma and Commercial Trading Corporation, seek to compel the respondent, the Superintendent of Building Inspection of the city of Dayton, to issue a building permit.

The matter has been submitted to the court upon an "Agreed Statement of Facts," briefs and arguments of counsel.

The parties are in agreement that the relators have submitted to respondent all drawings, plans, and information and documents required for the issuance of a building permit and that they have complied with all requirements of the Building Code and Zoning Ordinance of the city of Dayton which pertain to the issuance of building permits.

It also appears from the "Agreed Statement of Facts" that the relators will agree in writing with the city of Dayton

to cause their properties to conform with and be used and maintained in accordance with the Urban Renewal Plan of the city of Dayton.

In view of these undisputed facts, this case appears to fall within the scope of the pronouncement of the Supreme Court in the case of *Gibson* v. *City of Oberlin*, 171 Ohio St. 1, where the first paragraph of the syllabus provides:

"Where a property owner complies with all the legislative requirements for the procurement of a building permit and his proposed structure falls within the use classification of the area in which he proposes to build it, he has a right to such permit, and there is a duty on the part of the officer charged therewith to issue it."

But in denying the relators a building permit, the respondent relies upon Section 8 of the city of Dayton's Urban Renewal Ordinance which states as follows:

"After approval of an urban renewal plan by the City Commission, no building permit shall be issued for the improvement or enlargement of any existing structure, or for the construction of a new structure, in the clearance and redevelopment portion of the urban renewal area, except that such a permit may be issued for the repair of an existing structure when such repair is necessary for the immediate preservation of the public health and safety or is required by the redeveloper in accordance with the redevelopment plan."

The question thus presented is whether the city, by virtue of its Urban Renewal Ordinance, has the right to "freeze" relators' property indefinitely pending the possible acquisition of the property by the city at some time in the future.

In resolving this question, we perceive no critical distinction between the present case and the case of *State, ex rel. Dille Laboratories Corp.*, v. *Woditsch*, 106 Ohio App. 541, decided by this court on July 11, 1958, wherein the syllabus provides:

"1. Where the city commission of a municipality has passed a resolution declaring its intent to appropriate certain real property and has given written notice thereof to the owner, the city has not yet acquired the property, can exercise no proprietary rights therein, and the owner of the property is entitled to use and improve it in any lawful manner.

"2. Denial of a building permit to the owner of real property for the sole reason that the city may appropriate it is an unauthorized present interference with the rights of ownership, and issuance of the permit may be compelled by a writ of mandamus."

In that case, the court quoted the following language from the case of *Henle* v. *City of Euclid*, 97 Ohio App. 258, 264 (appeal dismissed, 162 Ohio St. 280):

"The claim that the city has the right to 'freeze' plaintiff's property, preventing her from its beneficial use until the city gets around to appropriating it for public purposes as a part of the Lakeland Freeway, is without foundation. If the city needs the property in that development, then an immediate proceeding in eminent domain would end this lawsuit. All that has been done so far toward building the Lakeland Freeway is tentative in character. The proceeding looking to the construction of the freeway has not yet reached a stage compelling the city to appropriate the property, nor is the plaintiff compelled to stand by, paying taxes without benefit, until the development reaches a stage, if it ever does, where her property must be taken for freeway purposes. * * *"

That language was also quoted with approval by the Supreme Court in *State, ex rel. Sun Oil Co.,* v. *City of Euclid,* 164 Ohio St. 265, 272.

In the *Dille Laboratories Corp. case,* at page 544, Judge Crawford made the following observations for a unanimous court, which apply with equal force to the present controversy:

"We can readily appreciate the difficulties confronting both the city and the relator. The location of the project has already been the subject of prolonged public debate; and the city must deal with other governmental agencies, both state and federal, as well as with engineers and others, in completing its plans and embarking upon final action.

"Relator, on the other hand, can hardly be expected to refrain indefinitely from embarking upon its plans until others complete theirs.

"* * *

"If no appropriation were contemplated, relator would unquestionably be entitled to a writ, if indeed a building permit

were then refused. He cannot be denied the writ because of a possible future appropriation which has not yet occurred and may never occur.

"The city not having appropriated the property, and the application for a building permit being admittedly in due form, relator cannot be denied its rights of ownership by withholding the permit."

It cannot reasonably be disputed that the value of property is dependent upon its actual or potential use. In *City of Akron* v. *Chapman*, 160 Ohio St. 382, 388, the Supreme Court said:

"* * * The substantial value of property lies in its use. If the right of use is denied, the value of the property is annihilated and ownership is rendered a barren right. * * *"

In the present case, and particularly in view of the fact that the city has not taken the necessary legal steps to appropriate the relators' property, the conclusion is inescapable that the relators are being denied the use of their property without due process of law.

Respondent's counsel have ably presented the most forceful arguments on behalf of the city which the facts of this case will reasonably permit, but, nevertheless, the city's case noticeably falters unless arbitrarily bolstered by the ancient theory that the king can do no wrong. So long as nothing appears to overcome the plain and simple fact that the city is attempting to exercise dominion over property which it does not own and may never acquire, to the detriment of its real owners who have complied in all respects with existing law, the building permit should issue.

The writ is, therefore, allowed.

*Writ allowed.*

SHERER and CRAWFORD, JJ., concur.