BOARD OF EDN. OF WILMINGTON CITY SCHOOL DISTRICT, APPELLANT, *v.* GRAHAM, APPELLEE.

(No. 229—Decided May 13, 1968.)

*Messrs. Buckley & Miller,* for appellant.
*Mr. Robert E. Renshaw,* for appellee.

SHANNON, J. This is an appeal on questions of law from the Court of Common Pleas of Clinton County.

The Board of Education of the Wilmington, Ohio, City School District decided that it was necessary to enlarge the grounds of the Wilmington Junior High School. The propriety of such decision is not disputed. Thereupon, negotiations were undertaken with the owner, appellee here, to acquire the land desired. When such negotiations failed, the board filed appropriation proceedings under Chapter 163 of the Revised Code and declared its intention to take possession; whereupon, three thousand dollars was deposited with the clerk of courts as the money value of the land as determined by the board. Almost immediately thereafter, possession was taken.

Upon subsequent trial, a verdict signed by nine jurors fixed the value at five thousand dollars, a motion for new trial was filed and overruled, and an appeal perfected.

Appellant sets out four assignments of error. The first of these raises the determinative issue: did the trial court err in admitting testimony as to change of zoning regulations.

Appellee was permitted to testify in chief, over objection, as follows:

"Q. Charles, on Lots 41 and 42 in this Alfred Johnson's subdivision, how long have you owned those lots?
A. Some four or five years.

"Q. And when you purchased those lots, what was your intention when you bought these lots?

"Mr. Buckley: Objection.

"Judge Swaim: Objection sustained as to that, Mr. Renshaw. It is not what he contemplated six years ago. We have to come down to the time of the appropriation and the date is August 11, 1966, under the statute.

"Mr. Buckley: Pardon me, if the Court please, I think one of the answers indicated the date of the going into the possession as August 31. It is a small point. The petition was filed August 11th. The possession date was actually August 31.

"Judge Swaim: That's right.

"Q. Charles, on or about August of this year, what had you intended to do with the southern part of Lots 41 and 42 in the Alfred Johnson subdivision?

"Mr. Buckley: Objection.

"Judge Swaim: I'll permit that question. Objection overruled.

"Mr. Renshaw: Answer the question.

"A. I had contemplated on putting up an eight unit apartment.

"Q. How soon had you intended to start developing this eight family apartment building? A. I had hoped the first of the year to go to council and see if I could have the Lot made from R-1 to R-3. Locust Street which is about a half a block from the lot is R-3 permitting the building of an apartment."

The owner was also permitted to state that on two occasions he was successful in obtaining a zone change, this occurring six years earlier.

Upon cross-examination, this exchange was had:

"Q. Mr. Graham, have you owned this lot three or four years? A. Approximately.

"Q. Have you ever requested a change in zoning? A. No, I haven't.

"Q. Have you ever discussed it with the Mayor? A. No, I haven't.

"Q. Have you discussed it with the Secretary of the Planning Commission?

"Mr. Renshaw: Objection, your Honor, I don't think this is proper questioning. If he wants to—I'll withdraw my objection.

"Q. Have you discussed it with the Secretary of the Planning Commission? A. No, I haven't.

"Q. As a matter of fact you have done no act whatever toward a rezoning of this lot? A. No, I wasn't ready.

"Q. Although you have owned it for some period of time. Now, as far as readiness, Mr. Graham, have you completed plans for the building you say you planned to erect? A. I have been doing research work.

"Q. Have you employed an architect? A. Well, I already have the plans.

"Q. Do you have them here? A. No, I don't."

When counsel for appellant objected originally and moved that appellee's testimony in chief be stricken, the trial judge observed that "we will get into that later in the charge," referring to the question of reasonable probability of a zone change.

In his general instructions to the jury, the judge stated this:

"In determining 'fair market value,' the court charges you that it is undisputed in this case that the property in question at the time of the taking was zoned as residential property, R-1, for single family dwelling, with minimum lot area of 7,200 square feet. The highest and best use in law must be for a lawful purpose; you cannot determine it on what would be an unlawful use, and only a zoned use may be the basis for fair market value.

"There has been introduced evidence as to the distance of this lot to an R-3 residential use, multiple family dwelling.

"The court charges you that in considering what is just compensation to an owner under the Ohio constitutional provisions, and in calculating fair market value on the date of the taking, August 31, 1966, you cannot arbitrarily exclude prospective uses that were prohibited as to that property at the date of the taking. That is, present zon-

ing regulations cannot arbitrarily limit uses to be considered in determining fair market value, as the court will explain.

''The court charges you that in determining the highest and best use to which this property could be put, you are to consider the evidence and determine whether or not within the reasonably foreseeable future and in the reasonable administration of the zoning regulations of the city of Wilmington, there would be a reduction of the zoning class of this property from solely single family residential purposes, R-1, to some lesser use, such as R-3, multiple family residential purposes.

''You will determine from the evidence that, had this property not been taken on August 31, 1966, would it have been likely, within the reasonably foreseeable future and in the reasonable course of administration of zoning regulations of Wilmington, that this R-1 classification would have been reduced to the lesser classifications, such as R-3, and in light of that determination, if you so find, you will determine the highest and best use to which this property could have been used. You will then put your value upon this highest and best use to which this property could have been used, and consider its influence upon the fair market value of this property at the date of taking, August 31, 1966.

''The court charges you that in so considering, you must eliminate speculation as to what might have been the legislative policy of the proper bodies regulating zoning in Wilmington.

''That is, if you determine there might have been such a change within the reasonably foreseeable future and in the reasonable course of administration of zoning in Wilmington, at the time of the taking, then the value for such highest and best use under such change, as may be included, may be considered by you in determining the fair market value at the time of the taking on August 31, 1966.''

An issue similar to that in the case at bar was before the court in *Euclid* v. *Lakeshore Co.*, 102 Ohio App. 96.

There, the trial court limited the evidence of the value of the property taken to the highest and best uses for which it was available within the zoning restrictions. The owner had urged that expert witnesses should have, been permitted to take into consideration both the present uses to which the property could be legally devoted and its most valuable use or highest and best use when considered in the light of reasonable and probable zoning changes at some indefinite but closely related time in the future.

In rejecting the defendants' contention, the Court of Appeals for Cuyahoga County said, in paragraph seven of the syllabus:

"In a proceeding to determine the value of land appropriated for public purposes, the trial court should not permit evidence of speculation on what may be the legislative policy of a municipal council in the future in changing a particular zoning classification, where such evidence is considered for the purpose of fixing the value of the land taken."

We hold this to be the law of Ohio upon the subject involved. Therefore, we are confronted with the question whether there was any evidence that within the reasonably foreseeable future the legislative authority of the city of Wilmington would rezone the real estate.

The only testimony bearing upon this came from the owner himself. Even assuming that Graham is qualified to give expert testimony, there must be something before the court to warrant its permission to express opinion. When the end to be accomplished is completely beyond the control of the witness, he cannot be allowed to state what he "hoped" to be able to persuade a legislative body to do.

No testimony was offered nor, apparently, was any available from the lips of those who would be required to administer the zoning laws. Certainly, from those responsible for the administration of the zoning ordinances would come the best evidence upon the matter.

To follow the precedent established by the trial judge

in the case at bar would be to permit any owner to speculate the course of events to come which, beyond petitioning a given body, he would be powerless to influence.

The court was correct in its instruction to the jury that they were to eliminate speculation. However, there was before the jury no competent evidence upon which they could have determined ''whether or not within the reasonably foreseeable future and in the reasonable administration of the zoning regulations of the city of Wilmington, there would be a reduction of the zoning class of this property * * *.''

There was no competent evidence to support the contention that a reduction of the zoning classification would be likely to occur, and, therefore, the jury should have been limited in its establishment of fair market value to the highest and best use of the land when considered for the use permitted within the zoning ordinance applicable at the date of trial.

The admission of the testimony of the owner constituted prejudicial error; therefore, it is unnecessary to rule upon the other assignments of error.

The judgment fixing value is reversed and this cause remanded for a new trial in harmony with this opinion.

*Judgment reversed*

LONG, P. J., and HILDEBRANT, J., concur.