MASHETER, DIR. OF HIGHWAYS, APPELLANT, *v.* MARIEMONT, INC., ET AL., APPELLEES.

(No. 9933—Decided January 12, 1971.)

APPEAL: Court of Appeals for Franklin County.

*Mr. Paul W. Brown,* Attorney General, *Mr. C. William Dawson, Jr.,* and *Mr. Ralph C. Godwin,* for appellant.

*Messrs. Lucas, Prendergast, Albright, Gibson, Brown & Newman,* for appellees.

*Mr. C. Howard Johnson,* prosecuting attorney, and *Mr. William W. Holmes,* for appellees auditor and treasurer of Franklin County.

TROOP, P. J. This appeal is from the verdict of a jury and a judgment entered pursuant thereto by the Court of

Common Pleas of Franklin County on August 18, 1970. The land, the subject of the appropriation action filed by the director of highways of the state of Ohio, consisted of 8.5 acres, .55 acres presently occupied by U. S. Route 40, located on the south side of East Main Street, in the city of Columbus, between Noe-Bixby Road on the west and McNaughten Road on the east. The land was acquired by the present landowners, Mariemont, Inc., in 1956. The "day of take" was stipulated to be July 14, 1969. The land was, on the day of take, and presently is, zoned "R-1," single family residential, under an applicable ordinance of the city of Columbus. At the time of the acquisition the tract was zoned farm-residence under the 1948 zoning resolution of the county of Franklin.

This appeal is taken on questions of law by the director of highways. The Attorney General, as counsel for the director, predicates the appeal upon eleven assignments of error, two of which may be disposed of without comment. At the time of oral argument, the Attorney General withdrew his objection to special charge No. 1. Assignment of error 3 is an objection to the purely hearsay evidence in the testimony of George Little, who said, "I was advised by Mrs. Hardy" that the property in question would have been zoned commercial—"But for the highway." To have admitted such testimony was prejudicial error. Later discussion relates to the prejudicial nature of the statement.

Of the remaining nine assignments of error, two, Nos. 9 and 10, object to two special charges given by the trial court, and seven relate to the admission of evidence, oral testimony and exhibits. No attempt is made to discuss each assignment of error in detail. They are interrelated in that certain basic rules must be considered not only in order to dispose of a single assignment of error but also to resolve the larger questions necessary to be resolved by the appeal to this court. The approach is general with the hope that the underlying law may be so presented as to decide the particular.

Respect for the basic rule in appropriation matters

appears to be acknowledged by everybody involved in this lawsuit. The trial court told the jury that the amount to be awarded the landowner as compensation for the land taken was the amount determined to be the fair market value on July 14, 1969.

It is equally clear that the type of evidence of value which courts approve permits an appraiser to consider the highest and best use for a property in arriving at an opinion of the value of the property. In the development of the case before the jury the conflict between the director of highways, seeking to appropriate the land, and the landowner arises upon suggestions as to the highest and best use and not as to the determination of market value on July 14, 1969. Many factors enter into the consideration of buyers with respect to a given piece of land. Site analysis may be limited to present usage. It must be recognized, however, that a buyer may have in mind holding land out of use to await appreciation in value. The question is, narrowly and strictly, just what price would a willing purchaser pay an equally willing seller for the premises taken on a particular day, July 14, 1969, in the instant case? Textwriters and courts accept valuations based upon highest and best use concepts, not only present use, but potential use providing it is a reasonably probable use and not entirely speculative. All factors must be shown to influence the selling price on the day of "take."

The determination of compensation cannot be dependent upon whether or not there will be a change of zoning of the property in the future. Compensation must be based upon the fair market value of the property for its highest and best use available within existing zoning regulations. The *possibility* of future rezoning may not be utilized to increase the fair market value over that which an informed willing purchaser would pay under existing zoning. If, however, such a purchaser would be presently willing to pay more than an amount justified by the uses permitted under existing zoning because of a general belief that there is a *probability* of a change in zoning, to permit a more valuable use within the reasonably foreseeable future, such

evidence is admissible because it does reflect a factor in the present fair market value under existing zoning.

Highest and best use as a value factor in the determinations of appraisers is subject to definite limitations imposed by law. A rather early case, although there were others earlier, provides a basic rule. In *In re Appropriation by Supt. of Public Works* v. *Schaeffer* (1951), 155 Ohio St. 454, the court announced the basic rule, as follows:

"3. The rule of valuation in a land appropriation proceeding is not what the property is worth for any particular use but what it is worth generally for any and all uses for which it might be suitable, including the most valuable uses to which it can reasonably and practically be adapted."

A subsequent case, *In re Appropriation of Easement for Highway Purposes*: *Bd. of County Commrs.* v. *Thormyer, Acting Dir. of Highways* (1959), 169 Ohio St. 291, is important because of an addition to the language in the syllabus rule. In *Schaeffer* the phrase was, "the most valuable uses to which it *can reasonably and practically* be adapted." (Emphasis added.) In *Board of County Commrs.*, the wording is as follows:

"1. * * * the most valuable uses to which the land *can lawfully,* reasonably and practically be adapted." (Emphasis added.)

The additional term "lawfully" is the basis for the statements of textwriters and courts that the highest and best use is ordinarily one which is permitted by zoning regulations. (See also 19 Ohio Jurisprudence 2d 538, 540, Eminent Domain, Section 122.)

But buyers do buy and pay more for a given parcel of land than can be supported by a present legally permitted use, a possible highest and best use not in conformity to existing zoning limitations. Courts appear to permit such a situation to be considered and relax the rigid rule limiting testimony to the highest and best use permitted by present zoning regulations, but only within definite limitations.

Several Ohio cases are pertinent to a discussion of the broader rule, including *Bd. of County Commrs., supra,*

which has to do with the taking of land as to which there is a deed restriction, *Masheter* v. *Bd. of Edn.* (1969), 17 Ohio St. 2d 27, in which land improved with school buildings is involved, and *In re Appropriation for Hwy. Purposes* (1969), 20 Ohio St. 2d 43, the decision of which emphasizes the necessity of charging on highest and best use.

More particularly, a series of three cases deals head on with the matter of zoning restriction. The first of the group is *City of Euclid* v. *The Lakeshore Co.* (1956), 102 Ohio App. 96. Although not squarely in point on the matter of zoning, a very basic rule which is important to the latter part of this discussion is laid down by the court in *City of Euclid.* It is noted here for emphasis, as follows:

"6. The determination and fixing of zoning classifications within a municipal corporation is within the sound discretion of its legislative authority in the exercise of the police power to protect the public health, morals, safety and the general welfare of the people."

Judge Skeel found that there was no evidence that within the foreseeable future, in the reasonable administration of the zoning laws of the city of Euclid, there would be a change in the zoning of the land involved. The finding produced a paragraph in the syllabus as follows:

"7. In a proceeding to determine the value of land appropriated for public purposes, the trial court should not permit evidence of speculation on what may be the legislative policy of a municipal council in the future in changing a particular zoning classification, where such evidence is considered for the purpose of fixing the value of the land taken."

The Portgage County Court of Appeals cites and quotes from the *City of Euclid* decision in *In re Appropriation of Easement for Highway Purposes Over Property of Darrah* (1963), 118 Ohio App. 315. The language of the court in *Darrah* is as follows:

"In a proceeding by the Director of Highways to appropriate a parcel of land in a district zoned for residence use, but which because of zoning area restrictions has no lawful use under existing zoning regulations, where there

is a reasonable probability of a change in the zoning classification to a commercial use within the reasonably foreseeable future, testimony of expert witnesses that the highest and best use of the property is commercial and as to the commercial value of the property is admissible, and its influence upon the fair market value at the time of taking may be taken into account.''

At page 318 the court quotes paragraph 7 of the syllabus in *City of Euclid,* and then says:

''We agree with this general proposition of law. Such evidence should be admitted if pertinent, and excluded, stricken or disregarded only if it is speculative or remote.''

The most recent case in which the court faces squarely the matter of zoning restrictions is *Bd. of Edn.* v. *Graham* (1968), 15 Ohio App. 2d 196. The syllabus to this First District Court of Appeals decision is as follows:

''The admission of testimony of a property owner in a trial to determine the value of his appropriated property, that he 'hoped' to obtain a change in the zoning of such property to permit a more valuable use thereof, is prejudicial error, where there is no competent evidence whatsoever that a change in the zoning classification would be likely to occur.''

Judge Shannon relied upon the decision in the *City of Euclid* case, and says of it, at page 201: ''There, the trial court limited the evidence of the value of the property taken to the highest and best uses for which it was available within the zoning restrictions.'' His further comment is: ''We hold this to be the law of Ohio upon the subject involved.'' The court of appeals said, at page 201, that the trial court correctly instructed the jury to eliminate speculation because there was no competent evidence before the jury ''that within the reasonably foreseeable future the legislative authority of the city of Wilmington would rezone the real estate.''

In the instant case it must be said that there was, as in *Graham,* no evidence that in the foreseeable future there would be a rezoning of the real estate involved. In fact, the very approach of counsel for the landowner is an admis-

sion that there is no foreseeable change in zoning. That approach is apparent from the testimony of George Little, adduced early in the trial, that as early as 1958 when he was associated with the federal bureau of public roads, public authorities, charged with the administration of zoning regulations, conspired to retain certain zoning in order to depress the values of properties necessary to be acquired for public improvement. Two portions of Mr. Little's testimony, admitted over objection, are as follows:

"This is true, and this is not only true in this case but in most every case. Where a property is doomed for appropriation for highway purposes of some similar purposes, the municipality having control over zoning cooperate with the Highway Department."

"Well, it is pure economics. The Government doesn't want to pay any more for a right-of-way than they have to. So, why have someone who owns a tract of land build a big apartment building right in the middle of a new highway going through here? So, zoning was denied on this property for that reason."

Attention is directed to an annotation in 9 A. L. R. 3d 291, titled "Zoning as a Factor in Determination of Damages in Eminent Domain." Two subdivisions of the annotation are noted particularly. The first, at page 309, captioned "Consideration of probability of rezoning," states that market value may reflect possible rezoning, but the door to such evidence is not thrown wide open. It is noted that:

"* * * the courts have usually taken the view that a prospective purchaser on the open market, on a proper showing that such a change was reasonably probable in the reasonably near future, would consider the probability of such a change in zoning in valuing the property, and that the courts in condemnation should also receive such evidence."

The annotators cite *City of Euclid* v. *The Lakeshore Co., supra,* as the Ohio case in accord with the above proposition.

The second section noted is equally important, if not

more significant, than the first. At page 303, Section 5, titled "Attacks on validity of existing zoning; zoning designed to control cost to condemnor," subparagraph [a] says:

"It has generally been held that the validity of an existing zoning ordinance is not subject to a collateral attack in a trial for the determination of damages in eminent domain."

This we believe is the generally prevailing rule and the rule in Ohio even though courts quite generally vigorously condemn the practice of keeping acquisition cost low. In support of the general rule, the annotators cite the Ohio case of *Henle* v. *City of Euclid* (1954), 97 Ohio App. 258. Paragraph 3 of the syllabus reads as follows:

"3. A city cannot 'freeze' property thereby preventing the owner from improving it so that he may enjoy a beneficial use thereof only because the city may, in the future, need such property in constructing a freeway."

It must be emphasized that the relief sought in the common pleas court by Henle was a declaratory judgment, injunction and equitable relief. The appeal taken from the decision of the court of appeals was dismissed by the Ohio Supreme Court in *Henle* v. *City of Euclid* (1954), 162 Ohio St. 280.

There are many decisions by Ohio courts that follow the rule announced in *Henle*, with its many ramifications. Suggested as typical is the by no means exhaustive list as follows: *Kessler* v. *Smith* (1957), 104 Ohio App. 213, appeal dismissed 169 Ohio St. 91; *The State, ex rel. Dille Laboratories Corp.,* v. *Woditsch, Dir.* (1958), 106 Ohio App. 541; *The State, ex rel. Prentke.* v. *Village of Brook Park* (1958), 107 Ohio App. 325; *Schlagheck* v. *Winterfeld et al., Trustees* (1958), 108 Ohio App. 299; *State, ex rel. Mumma,* v. *Stansberry* (1964), 5 Ohio App. 2d 191; *The State, ex rel. Sun Oil Co.,* v. *City of Euclid* (1955), 164 Ohio St. 265; *State, ex rel. Mayfield Heights,* v. *Bartunek* (1967), 12 Ohio App. 2d 141; and *Burt Realty Corp.* v. *Columbus* (1970), 21 Ohio St. 2d 265.

There is no quarrel with the basic law announced by

the trial court in its general charge that no governmental agency "can rely on restrictive provisions of its zoning ordinances to depress land value," or with the further pronouncement:

"* * * In your determination of the highest and best use of the property involved, you should also presume that all public officials will do their duty and make responsible decisions based solely on the fact in every case and not on any irrelevant matters or factors or pressures."

To have included, however, in an appropriation matter limited to an award of compensation for real estate taken by the state of Ohio for highway purposes, the question of the abuse of discretion by the legislative authority of the city of Columbus, and by inference the authority for Franklin County, in zoning regulation, was error and not in accord with the law of Ohio.

It is difficult to appraise each assignment of error in this appeal. The testimony of Jack Bachtel and Thelma Hardy, the objects of assignments of error 2 and 4, serves no purpose except to impugn the conduct of legislative authorities in zoning matters. Those assignments of error are well taken. The testimony of Ivan Hill, subject of assignment of error 7, is of the same tenor and No. 7 is likewise well taken.

There is an abundance of irrelevant, and in some instances prejudicial, testimony throughout the presentation of this case, such as in the testimony of Mr. Davis, Mr. Hill, and Mr. Little. So much in fact that the admission of the trial court appears well taken.

There is sufficient error in the assignments of error noted to warrant a reversal of the judgment of the trial court. The ground rules as to admissible testimony concerning highest and best use, and what is not admissible respecting an indictment of the acts of a legislative authority in zoning matters, are sufficient to sort out the admissible from the inadmissible and prejudicial, which being interwoven with the valid evidence involved in the other assignments of error makes it impossible to rule upon each of them in toto. Portions of the assignments of error ad-

dressed to the type of evidence criticized above are sustained and the remaining portions overruled.

The verdict and judgment of the trial court are reversed and the cause remanded for further proceedings according to law and in compliance with this decision.

*Judgment reversed and cause remanded.*

STRAUSBAUGH and HOLMES, JJ., concur.